# WARNER H. WORTMAN

*v.*

# HENRIETTA C. PRICE.

1. MARRIED WOMEN—*how far husband may be agent for the wife under the law of* 1861. Under the act of 1861, for the protection of married women in their separate property, the husband may act as agent for his wife, in a particular transaction, or generally, for the control of her property, or the investment of her funds. He may lease her property and collect the rents, or invest her money, or change the character of her investments, if authorized by her, and he may do this without subjecting her property to his debts.

2. But she cannot make him her agent to engage in trade, to be managed by him, to which all his time and energies must be devoted, without subjecting the property embarked in such trade and its profits, to the payment of his debts.

APPEAL from the Circuit Court of McLean county; the Hon. JNO. M. SCOTT, Judge, presiding.

The facts in the case are substantially set forth in the opinion of the court.

Messrs. TIPTON, BENJAMIN & ROWELL, for the appellant.

Messrs. BRIER & BIRCH, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was a trial of the right of property, in which Mrs. Henrietta C. Price claimed the ownership of about seventy hogs, levied upon under an execution against her husband. She testified that her husband's father gave her, in 1866, different sums, amounting in all to $2,960, and a piece of land, which she sold at $800, and that her husband had been for a year acting as her agent, in buying and shipping grain and stock, with this money. The partner of Mr. Price was

produced as a witness, and he testifies that he and Price formed a partnership for dealing in grain and stock, in November, 1866 ; that he knew nothing of Mrs. Price in the business, and was not in partnership with her ; that the firm sometimes did business to the amount of $4,000 or $5,000 per week ; that they made money, and that he did not know where the money came from that Price put into the business. The partnership was dissolved before the hogs in controversy had been levied on, and he had sold a part of them to Price. The case was submitted to the court, without a jury, and on this state of facts, the finding and judgment were for the claimant of the property.

We think the finding was erroneous. It is urged that although such an arrangement could not have been sustained prior to the law of 1861, known as the married woman's act, it is legalized by that law. Under that law, the husband can undoubtedly act as the agent of his wife, for the purpose of managing her separate property, but it must be an actual and *bona fide* agency, and not an arrangement, by which, under color of an agency kept concealed from the public, the husband is to enter into trade with capital furnished by the wife, carry on business in his own name, precisely as he would do with his own money, and then claim, as against his creditors, that all the property bought and sold by him in the course of his business, is the property of his wife. In the case before us, it does not appear that there was any arrangement between the husband and wife for his compensation, although he devoted all his time and energy to the business which he claims to have been conducting as her agent. The profits of this business arose in part from the capital employed, and in part from his time and skill, yet there was no arrangement as to their division. Although the act of 1861 authorizes the wife to hold personal property, and under that law she may employ her husband as agent, to manage it, yet it does not authorize her to receive, to the exclusion of creditors, the entire fruits of his

time, skill and industry, and it must not be so construed as to invite to fraud.

This transaction can only be regarded, so far as concerns creditors, as a loan of the wife's money to her husband, by means of which he engaged in trade. Such would have been its character if the money had come from a third person, and it must be so regarded as between the husband and wife. It has been decided in other States having a married woman's law, similar, in most respects, to our own, that the wife cannot, by virtue of this law, engage in trade. *Freeman* v. *Aeser*, 5 Duer, 476; *Sherman* v. *Elder*, 24 N. Y., 383; *Wooster* v. *Northrup*, 5 Wis., 245; *Glover* v. *Alcott*, 11 Mich., 471; *Gage* v. *Dauchy*, 28 Barb., 622; *Keeney* v. *Good*, 21 Penn. State Rep., 349; *Hallowell* v. *Horter*, 35 ib., 375. Whether she can do so in her own name, and managing the business herself, without the aid or interference of her husband, is a question not involved in the present case, and one we do not decide. But we have no hesitation in saying, that if she advances capital to her husband, with which he engages in trade, such capital and its fruits in the business, will be subject to the husband's debts, even though he may claim to be acting as his wife's agent, and doing business in her name. A different rule would lead to the grossest fraud. What was said in *Brownell* v. *Dixon*, 37 Ill. 197, in regard to the power of the husband to act as agent for his wife, simply means, that he may act as her agent for a particular transaction, or generally, for the control of her property or the investment of her funds. He may lease her property and collect the rents, or invest her money, or change the character of her investments, if authorized by her, and he may do this without subjecting her property to his debts. But we did not say, nor expect to be understood as saying, that she could make him her agent, for the purpose of engaging in trade, to be managed by him, and to which all his time and energy might be devoted, and that the property embarked in such trade, and its profits, would be

beyond the reach of his creditors. Such is not the law. The judgment must be reversed.

*Judgment reversed.*