## JOHN M. GUILL ET AL.

### v.

### FRANCISKA HANNY.

1. HUSBAND AND WIFE—EARNINGS OF HUSBAND AS AGENT OF HIS WIFE.—The statute of 1874, in relation to the rights of married women, has not enlarged their rights to the extent that a wife can appropriate the results of the husband's labor and skill, in a business carried on in her name, so as to prevent his creditors from obtaining the benefit of it, as a means of collecting their debts.

2. WHERE THE WIFE EMBARKS IN BUSINESS AND EMPLOYS HER HUSBAND AS AGENT.—If the wife furnished the original capital to commence the business, and the husband conducted it, and through his labor and skill had contributed largely to increase the capital stock, the additions so made do not become the separate property of the wife so as to be beyond the reach of the husband's creditors. It is not the wife's property, but the proceeds of the husband's labor and skill that the creditors have a right to claim.

3. INTERMINGLING OF GOODS. — Where the changes of the material

originally purchased, produced by the labor and skill of the husband, have become so interwoven with the capital of the wife as to render identification impossible, the wife loses the right to reclaim her property, or, more correctly speaking, the transaction may be regarded, so far as concerns the creditors, as a loan of the wife's money to her husband, by means of which he engaged in trade.

4. INSTRUCTIONS—MUST BE BASED ON EVIDENCE.—Instructions should be based upon the evidence, and it is error not to confine them to the testimony in the case.

APPEAL from the Circuit Court of Peoria county: the Hon. JOSEPH W. COCHRANE, Judge, presiding.

Messrs. JAMES & JACK, for appellants; upon the question of refusal of defendant's instructions, cited Wortman v. Price, 47 Ill. 22; Brownell v. Dixon, 37 Ill. 197; Wilson v. Loomis, 55 Ill. 352.

That if a wife places her money in the hands of her husband to be used by him in trade, it is virtually a loan to him and his stock in trade would be liable for his debts: Wortman v. Price, 47 Ill. 22; Blood v. Barnes, 79 Ill. 437; Dean v. Bailey, 50 Ill. 481.

Mr. S. D. PUTERBAUGH, for appellee; that a wife may employ the aid of her husband in the management of her separate estate without subjecting it to the payment of his debts, cited Primmer v. Clabaugh, 78 Ill. 94; Dean v. Bailey, 50 Ill. 481; Blood v. Barnes, 79 Ill. 437.

SIBLEY, J. The principal question arising in this case is whether the revised laws of 1874 have changed the doctrine established in Brownell v. Dixon, 37 Ill. 198, and approved in Wortman v. Price, 47 Ill. 22, and Wilson et al. v. Loomis. et al. 55 Ill. 352, under the act of 1861, in relation to the subject whether the continued earnings of the husband can be appropriated to the increase of the wife's capital at the expense of his creditors.

The facts are that the property levied on, consisting of the contents of a wagon shop, by the creditors of Richard Hanny in July, 1876, was replevied by the appellee in this suit on the following September, claiming the same as her separate

property. Mrs. Hanny testified on the trial of the cause that she borrowed of one Granville James $500, for the purpose of purchasing a stock of groceries in order to furnish her husband, Richard, who was then largely in debt, with some employment. Mr. Hanny, as her agent made the purchase, and after it was made, conducted and controlled the business (she having little or nothing to do with it), for about six months, when the store was sold out and the amount realized from the sale invested in the business of manufacturing wagons and buggies. The preparation and prosecution of which was left entirely to the husband's judgment.

The stock on hand at the time of the levy was worth from $900 to $1,000. She says that the grocery was sold out because Mr. James thought they were not doing well in the business, and proposed that Mr. Hanny should go to work at his trade of wagon-making, which proposition she agreed to, and took the proceeds arising from the sale of the grocery and invested it in this enterprise, her husband still continuing to manage and control this new business as her agent. Mrs Hanny's testimony is very loose and unsatisfactory, to say the least of it, and in some instances contradictory. She says that she personally borrowed the money of James, and no one else was present when she gave her note, except his wife. Afterward, when pressed, admits that her husband may have signed the note for her; which turns out from the testimony of James to be the fact, and that her husband was present at the time. She also says that the money was borrowed two or three days previous to purchasing the grocery. Yet it appears that the goods were purchased in September, and the note was dated in April. Her testimony respecting the $570 which she received from Germany in 1869 is too vague and inconclusive to be of much weight. She would not use it in purchasing the grocery, because she was saving it for her children, and preferred to borrow at a high rate of interest rather than to take the chances of losing her own money in a business with which she was unacquainted. What became of this money does not very clearly appear. She said at the time of the trial that she "had not got it all any

more." How it had diminished is not important, since she does not say that any portion of it was ever put into the business managed by her husband, although the impression seems to have been conveyed to the jury that she had done so. The record, however, fails to furnish any evidence of it. Then again, Mr. James was extremely accommodating to loan this $500 to Mrs. Hanny, who had no property except a little money that she was saving for her children, and refused to risk it in the business that she wished to engage in, without any security, relying, as she says, upon the expectation of its being repaid by means of the husband's earnings. It may here be remarked, that if it was, as they all agree, except the husband, who for some reason was not produced as a witness on the trial, understood his earnings were relied upon for the repayment of the money loaned to furnish the capital, how could the business be considered the wife's separate property, when her services had contributed nothing to its profit?

According to Mrs. Hanny's testimony, she was present when the contract for purchasing the grocery was made, and paid the purchase money. But the witness DeWorth, who was in possession of the establishment, and Mesterschmidt, the real owner of it, both swear that the sale was made to Richard Hanny, and that his wife was not present at the time, nor was her name mentioned in the transaction. DeWorth also states that Mr. Hanny gave him a check on the bank to pay for the property.

The first time that either of them speak of seeing Mrs. Hanny was after the contract had been closed and an account of stock was being taken. Mesterschmidt says that two or three days after the matter was closed up, he saw the name of Mrs. Hanny on the sign as proprietor of the store; inquired of Mr. Hanny what it meant, and was informed by him that he had a difficulty with one Hughes, and just as soon as he had settled that, he would run the business in his own name.

This whole case has so much the appearance of an effort on the part of the principal parties interested to establish the husband of appellee in a business where his earnings and the fruits of his labors were to be placed beyond the reach of his creditors

for an unlimited time, that it should receive no favor from either courts or juries.

Mrs. Hanny testified that there was no agreement as to what her husband was to receive by way of compensation for his services in attending to her business, except "that he was to be paid as the business would pay," until about the time of the levy upon the property, when it was understood that he was to have $1.50 per day for his labors. On cross-examination, she was asked whether she had ever paid her husband anything on account of his services, and the Court refused to permit her to answer the question. In this, we think, the Court erred. To show the real nature of the transaction between the husband and wife, it was eminently proper to ascertain (if he was acting as her agent only in transacting the business) whether he had ever received any, or what, compensation for his labor.

Instruction No. 4, given for the plaintiff as follows:

4. "That if the jury find from the evidence that plaintiff had $570 in her own right, derived from a source other than her husband, and that on her own name and credit she borrowed $500, and with these sums she purchased stock and engaged in the business of manufacturing wagons, and that no part of the capital used in such business was furnished by her husband and that defendants, as constables, by virtue of executions in their hands against Hughes and Hanny, the husband of the plaintiff, seized and took the property of plaintiff so purchased and manufactured by her, you will find the defendants guilty, and the property so seized and taken in the plaintiff," was erroneous, for the reason there was no evidence in the case tending to show that Mrs. Hanny *ever* put any amount of money into the business of manufacturing wagons, which she owned in her own right, except the proceeds derived from the sale of the grocery; much less the sum of $570 in addition to it. She says that she put into that business the $500, realized from the sale of the grocery; no other sum is mentioned by her at all.

Instructions should be based upon the evidence, and it is error not to confine them to the testimony in the case. Goodwin v. Durham, 56 Ill. 239; Holden v. Hulbert, 61 Ill. 280;

Paulin v. Howser, 63 Ill. 312; Alexander v. Town of Mt. Sterling, 71 Ill. 366; Ill. 463; Murphy v. Larson, 77 Ill. 172.    This instruction, as well as No. 5, is also liable to another objection; that is, if the wife furnished the original capital to commence the business, and the husband conducted it, and through his labor and skill had largely contributed to increase the stock; still this addition to the capital, the jury were instructed, was so far beyond the reach of his creditors as not to be liable to seizure.    It was said in Wilson et al. v. Loomis et al. *supra,* " that if she could thus appropriate the results of her husband's labor, industry and skill to herself as separate estate for a number of years, no reason is perceived why she should not do so for an entire lifetime."

We do not think the law as settled in that and the previous decisions upon the same subject is at all in conflict with the cases referred to by appellee.    Primmer v. Clabaugh, 78 Ill. 94; and Blood v. Barnes, 79 Ill. 437; simply uphold the doctrine that the wife by merely allowing her husband to manage her property does not forfeit her right to it.    This does not militate against the former decision upon the question in controversy.    For in these cases the identical articles of property in dispute belonging to the wife were the only subject of question. Hence while the farm in the one case, and the printing press in the other owned by the wife, could not be taken for the husband's debts, it was conceded that the crops raised upon the land by the husband's labor would, after the payment of a reasonable rent, be liable to seizure by his creditors for the satisfaction of his debts.    It is not the wife's property but the proceeds of the husband's skill and labor that the creditors have a right to claim.    In the present case, there was no proof that any of the stock on hand at the time of the levy included articles that were purchased by the money of the wife in the first instance.    The changes of the material originally purchased that were produced by the labor and skill of the husband had been so interwoven with the capital of the wife as to render any identity quite impossible.    Then the familiar rule that one who willfully mixes up his property with that of another so as to destroy its identity, loses his

right to reclaim it, seems to have some application in cases like the present, although it may be more correct to say, as is said in Wortman v. Price, *supra*, that "the transaction can only be regarded, so far as concerns the creditors, as a loan of the wife's money to her husband, by means of which he engaged in trade." It is, however, insisted that since the decisions referred to were made, the revised laws of 1874 have enlarged the rights of married women to such an extent that they can now transact business in the same manner as if they were sole and unmarried. That the husband is not liable for the debts of his wife except in certain cases nor is she in any way responsible for his. But can it be supposed the Legislature meant that either could appropriate the other's labor and skill so as to prevent their separate creditors from obtaining the benefit of it, as a means of collecting their honest debts. This would be attributing to the law-makers a motive that cannot be supposed to have existed. Indeed the law itself is careful to provide that neither the wages nor the earnings of the one, shall be liable for the separate debts of the other, clearly indicating that such labor and skill should remain intact for the purpose of enabling each to discharge their own separate liabilities; and nothing appears in the law pointing to an intention to change the doctrine as it had previously been established by the Supreme Court.

For the reasons indicated, the judgment of the Circuit Court will be reversed and the cause remanded.

Judgment reversed.