Syllabus.

AMANDA TOMLINSON *et al.*

*v.*

GEORGE A. MATTHEWS *et al.*

*Filed at Springfield March 21, 1881.*

1. FRAUDULENT CONVEYANCE—*giving preference to one creditor.* A debtor in failing circumstances may prefer one creditor to the exclusion of others, when he does so in good faith and for a valuable consideration, and the same rule applies to cases of a settlement by a husband upon his wife in payment of an indebtedness from him to her.

2. SAME—*husband may prefer his wife in paying his debts.* Under the principles deducible from the decisions of this court growing out of the legislation respecting married women and their separate property, the husband may prefer the wife (she being a creditor) to other creditors, provided the preference is based upon a valuable consideration and is made in good faith.

3. Where a married woman actually loaned her husband money which she derived from her father and his estate, taking the husband's notes for its repayment, and she did not know at the time of making the loans that he was in failing circumstances, and he afterwards conveyed a tract of land to her, not worth any more at the time than the amount due from him to her, such conveyance was held valid as against creditors of the husband whose debts were contracted prior to the conveyance.

4. Although a person may be credited upon the faith of his ownership of property, this will give the creditors no specific lien upon it, or prevent his subsequently selling and conveying the same to a purchaser in good faith paying a valuable consideration for it, and a creditor may purchase whose debt may thereby be paid, although other creditors be left unpaid.

5. MARRIED WOMEN—*common law disabilities changed by statute.* Under the legislation of this State, the common law disabilities of married women are completely changed, and the common law rights of the husband in respect to his wife's property have been abrogated. As respects her separate property, the husband and wife stand before the law as strangers.

6. SAME—*she may make her husband her agent.* A married woman may make her husband her agent to collect debts due her, to receive from others the income of her estate, and to manage and control it in her name, and under this principle his dealings with it will be presumptively in the character of agent.

APPEAL from the Circuit Court of Montgomery county; the Hon. JESSE J. PHILLIPS, Judge, presiding.

Mr. R. McWILLIAMS, and Mr. EDWARD LANE, for the appellants:

It is admitted by an agreement in the record, that at the time of the conveyance to Mrs. Tomlinson, and the hearing, the property was worth only $2000. The husband being justly indebted to her in that amount, the conveyance to his wife is not fraudulent. A debtor in failing circumstances may prefer one creditor and pay him in full to the neglect of others. *Cross* v. *Bryant,* 2 Scam. 43; *Howell* v. *Edgar,* 3 id. 417; *Powers* v. *Green,* 14 Ill. 387; *Wilson* v. *Pearson,* 20 id. 87; *Finley* v. *Dickerson,* 29 id. 9; *Hessing* v. *McCloskey,* 37 id. 344.

The husband and wife, since the Married Woman's act, as respects her separate property or estate, stand before the law as strangers. *Patten* v. *Patten,* 75 Ill. 451.

Money of the wife loaned to her husband, either before or after marriage, is a proper charge against him while living, and against his estate after his death. *Whitford* v. *Daggett,* 84 Ill. 144; *May* v. *May,* 9 Neb. 16; *Logan* v. *Hall,* 19 Iowa, 491; *Huber* v. *Huber's Admr.* 10 Ohio, 37; *Wood* v. *Warden,* 20 id. 518.

A sale to a relative is not a badge of fraud. *Nelson* v. *Smith,* 28 Ill. 501; *Cameron* v. *Savage,* 37 id. 172; *Taylor* v. *Moore,* 2 Randolph, 563; *Patrick* v. *Patrick,* 77 Ill. 560; Bump on Fraudulent Conveyances, 314.

Fraud must always be proved—it is never presumed. *Wright* v. *Glover,* 27 Ill. 430.

Mr. BEN. E. JOHNSON, and Mr. J. M. TRUITT, for the appellees:

As direct evidence can not be had, circumstances tending to prove fraud may be considered. *Swift* v. *Lee,* 65 Ill. 336.

A husband may convey property to his wife under the law of 1874, and the deed be good between the parties, but it may be fraudulent as to the creditors of the husband. *Leopold* v. *Krause,* 95 Ill. 440.

The Revised Statutes of 1874, chapter 68, section 9, page 577, answers the question whether the wife as to her separate property can be a creditor of her husband, in the affirmative. It also answers the question whether the husband or wife, as to one conveying property to the other, stands before the law as strangers, in the negative.

The case of *Whitford* v. *Daggett*, 84 Ill. 144, and the other authorities cited by the plaintiffs in error, are all cases between the husband and wife, or her and the administrator of his estate, where the rights of third persons were not adjudicated.

Where a husband used the capital of his wife in his own name with her consent, she will not be allowed to interpose her claim as against the creditors of her husband. *Hockett* v. *Bailey*, 80 Ill. 75; *Wortman* v. *Price*, 47 id. 22; *Patton* v. *Gates*, 67 id. 164.

Mr. Justice Scholfield delivered the opinion of the Court:

The general principle that a debtor in failing circumstances may prefer one creditor to the exclusion of others, when he does so in good faith and for a valuable consideration, has been often announced in opinions by this court. *Cross* v. *Bryant*, 2 Scam. 43; *Howell* v. *Edgar*, 3 id. 417; *Powers* v. *Green*, 14 Ill. 387; *Wilson* v. *Pearson*, 20 id. 87; *Finlay* v. *Dickerson*, 29 id. 9; *Hessing* v. *McCloskey*, 37 id. 342; *Morris* v. *Tillson*, 81 id. 607.

In *Patrick* v. *Patrick*, 77 Ill. 555, we held the same doctrine to be applicable to cases of settlement by husband upon the wife, quoting with approval this language from 2 Kent's Commentaries, (8th ed.) 166, side page 174:

"The settlement made after marriage, between the husband and wife, may be good, provided the settler has received a fair and reasonable consideration in value for the thing settled, so as to repel the presumption of fraud. It is a sufficient consideration to support such a settlement, that the wife re-

linquishes her own estate, or agrees to make a charge upon it for the benefit of her husband, or even if she agrees to part with a contingent interest; but the amount of the consideration must be such as to bear a reasonable proportion to the value of the thing settled, and when valid, these post-nuptial settlements will prevail 'against existing creditors and subsequent purchasers." See also, to like effect, 1 Bishop's Law of Married Women, § 735, *et seq.*; *Barnwell's Exr.* v. *Lumsden*, 24 Grattan, 443.

The common law theory, that the wife was deemed to be under the power and coercion of her husband, and her separate legal existence so merged in his legal existence that she was incapable, except in certain limited cases, of contracting with him or with others, has been completely changed in this State by legislation. And we have said, by virtue of this legislation, where " her estate is under the statute, the common law rights of the husband, in respect of the property of the wife, can have no influence whatever, simply because the statute has abrogated them. The relation of the parties may be considered with reference to the weight to be given, or 'inference drawn from, their conduct and dealings, with regard to her separate.property. In the determination of a claim of the wife upon the husband, like that here involved, it is indispensable for the judicial mind to become fully conscious of the change wrought by the statute, and that husband and wife, as respects her separate estate, stand before the law as strangers. Hence she may, as has been repeatedly decided by this court, make her husband her agent to collect debts due her, to receive from others the income of her estate, and to manage and control it, in her name, and, under this principle, his dealings with it will be presumptively in the character of agent. His receipt of proceeds and income, with her consent, will be in that character, and for her, and they will not, in deference to marital legal rights, thereby become his property. If the husband claim such income as a gift, or other legal transfer thereof,

by the wife to him, the burden is upon him to establish his claim by evidence." *Patten* v. *Patten*, 75 Ill. 451.

And, again, in *Whitford et al.* v. *Daggett*, 84 Ill. 144, where bill in chancery was brought by the widow against the heirs and representatives of the intestate to admit her as a general creditor of the estate for certain moneys lent to him by her before their marriage, and other moneys lent to him by her after their marriage, we said: " Since our statute of 1861, relating to the rights of married women, the husband does not, by marriage, acquire title to the money and personal property of the wife. * * Money of the wife loaned to the husband, either before or after marriage, is a proper charge against him while living, and against his estate after his death." See also *Hamilton* v. *Hamilton*, 89 Ill. 349.

So, also, upon like principle, in *VanDorn* v. *Leeper*, 95 Ill. 35, we held that an agreement between husband and wife, whereby he was to buy land for the wife, pay for the same with money inherited by her as her separate estate, take a deed therefor in his own name, convey to a third person and have such third person convey to her, when executed, was free of legal objection, and completely vested the title in her.

And, in *Tyberandt* v. *Raucke*, 96 Ill. 71, where the only proof that a conveyance was fraudulent was the fact that it was made by an indebted wife to her husband, and they both testified that the conveyance was executed in consideration that the husband undertook to pay certain specified debts of the wife, which was not a grossly inadequate price for the property, and that he had since paid the same, we held there was not sufficient proof of fraud to defeat the husband's equitable title.

The necessary conclusion, from these authorities, is:

1st. The husband may prefer the wife, (she being a creditor) to other creditors, provided the preference is based upon a valuable consideration, and is made in good faith.

2d.   As to the property of the wife, protected as her separate property by the statutes in force, in reference thereto, the husband occupies the same relation as does a stranger. She may sell it or loan it to him, or constitute him her agent for its management and disposition ; but a gift of it by her to him will not be presumed, in the absence of proof to that effect.

Applying these principles to the facts in the present case, it is clear there is no ground to impeach the conveyance by Daniel Tomlinson to his wife, the appellant.

There is no dispute that the conveyance was made in consideration, and as a payment of two promissory notes given by him to her—one for $1000, and the other for $750. The $1000 note bears date July 6, 1872, is payable to appellant or order, one year after date, with interest from date at ten per cent per annum.   The $750 note bears date August the 7th, 1876, and, likewise, is payable to appellant or order, one year after date, with interest from date at ten per cent per annum.   The conveyances sought to be set aside bear date December 16th, 1878, and the payments, up to that time, made on the note, were inconsiderable, not aggregating to exceed $50, so that the amount then due, for principal and interest, largely exceeded $2000.   By agreement of parties, it is a conceded fact that the property conveyed did not, at the time of the conveyances, exceed in value $2000, and it was of no greater value at the date of the trial in the court below.

Here, then, was a sufficient consideration for the conveyances, unless the promissory notes themselves have been impeached.   We think the evidence, instead of impeaching the consideration of the notes, amply establishes its sufficiency.   Both Daniel Tomlinson and his wife, the appellant, say these notes were given by him to her at, or reasonably near, the dates they respectively bear, for money before that time borrowed of her by him, and that this money was received by her, in part, from her father, in his lifetime, and

the balance from his estate since his death. There is not a particle of evidence, that we have discovered, that tends to show this is not the truth.

She says, "I received from my father in his lifetime, in 1862, $50.00; in 1863, $100.00; in 1864, $220.00; in 1865 or 6, $200.00; in 1868, $75.00,"—making, in all, $645.00.

Then, she says, after her father's death, she received from his administrator, in 1870, $197.77; in 1871, $194.44, which, added to the former amounts, makes $1037.21. And this money was, chiefly, loaned by her to her husband from time to time, as she received it, and the $1000 note was given in consideration thereof. She says the money was loaned to her husband, and he coincides in that statement, and that it was, at first, understood that he was to convey her some property for it, but afterwards he gave her the note. When this note was executed, Daniel Tomlinson was entirely solvent, as we understand the evidence.

After the execution of this note, appellant received money from the administrator of her father's estate, as follows: In 1873, $130; in 1874, $46; in 1875, $486; in 1875, $90; in 1876, $572.88; in 1877, $572.44; making a total of $1897.32.

From money thus received, she says she had loaned Turner Brothers $450. This money her husband collected, and she loaned it to him, together with $300 more of the money she had received from her father's estate, making the $750 for which the note of that amount was given.

When her husband got this money, she says nothing was said about paying it back—but her intention was, it was to be paid back; and from her husband's subsequent act in executing the note, it appears, quite clearly, that he also understood it was a loan and was to be paid back.

The evidence negatives the idea that appellant knew that her husband was insolvent when he obtained the last money and executed the $750 note. Indeed it does not clearly appear that he then was, in fact, insolvent.

Were this a transaction between strangers, there could not be the slightest pretense for doubting that the notes were given for an ample valuable consideration, or for claiming that there is evidence to show that the conveyance was not solely and *bona fide* for the purpose of paying off the notes, and, to that extent, preferring the holder to other creditors.

But appellees made proof that their debts were contracted before the conveyance, on the faith of Daniel Tomlinson's solvency, based, in part, upon a belief of his ownership of this property, which the records then disclosed; and *Wortman* v. *Price*, 47 Ill. 22, *Patton* v. *Gates*, 67 id. 164, and *Hockett et al.* v. *Bailey*, 86 id. 74, are cited and relied upon by counsel, as sustaining the proposition that, in view of these facts, the conveyance was a fraud upon their rights. An examination of those cases will show that they were decided on very different states of facts from that involved in the present case, and that they can not, therefore, be held to be authorities to the extent claimed. In *Wortman* v. *Price*, there was a trial of the right of property, in which Mrs. Henrietta C. Price claimed the ownership of about seventy hogs, levied upon under an execution against her husband. She claimed the hogs belonged to her because her husband was doing business with her money; but there was countervailing proof that her name was unknown in the business, and that the hogs were purchased by her husband, in the course of his business, as his own property.

In *Patton* v. *Gates*, the question was as to whom a promissory note belonged. Allen and Kirkpatrick entered into partnership in the manufacturing and repairing of farming implements. They purchased a lot, built a house, purchased and put machinery in it, and procured material for carrying on the business. After a time, becoming involved, Kirkpatrick exchanged the manufactory and machinery with Utt for eighty acres of land, which he had conveyed to his wife,— and the note involved in the controversy was given on a sale and conveyance, by the wife, of this eighty acres of land.

So the case turned upon the question whether the conveyance to Kirkpatrick's wife could be sustained as against his creditors,—she claiming to have furnished the money which Kirkpatrick put into the firm. There was other evidence to rebut the truth of this claim.

In *Hockett et al.* v. *Bailey,* the question again was as to the *bona fides* of a conveyance to the wife. The consideration of that conveyance was the conveyance by her husband to the grantors, of another tract of land. She claimed that tract had been purchased with money derived from her father's estate. But it was shown that her money first went into a farm that was bought in the name of and conveyed to her husband,—that this farm was sold and another bought with the proceeds, and this process repeated several times,— all in the name of the husband.

In each of these cases, the ownership of the wife, by reason of the circumstances, was found to be merely colorable, and for the purpose of enabling the husband to avoid the payment of his debts, and not *bona fide* and resting upon a valuable consideration.

The indebtedness from the husband to the wife is, in the present case, clearly made out. If the evidence can be credited it is real, and not simulated or affected merely. There is no question here whether, as to particular property, she has so acted as to induce others to believe, and so believing, to credit her husband upon the faith of the belief that it was his.

True, up to the time of the conveyance, creditors were induced to believe, and doubtless did believe, that this property belonged to Daniel Tomlinson. This was the truth, so far as we are advised by the record. But did this give creditors a specific lien upon this property? Certainly not. Although the property belonged to Daniel Tomlinson and he was credited upon the faith of such ownership, this did not prevent his subsequently selling and conveying it to a purchaser in good faith, paying a valuable consideration for it;

and, as we have seen, that purchaser might be a creditor whose debt would be thereby paid, although other creditors would be left unpaid. It must, therefore, follow, that unless the wife, as a creditor, occupies a different position in respect of obtaining payment or security from her husband, from that occupied by other creditors, the fact that Daniel Tomlinson was credited because of his ownership of this property, can be of no importance.

The statute does not place her upon a different footing, and we know of no reason why she should be.

With the policy of the law allowing the relation of debtor and creditor to exist between husband and wife, we have nothing to do. The legislature has seen fit to authorize the creation of such relation between them, and it only remains for us to administer the law as we find it.

The relation of husband and wife affords abundant facilities for colorable and fraudulent transfers, and, on this account, great care should be exercised in scrutinizing and weighing the evidence of transactions between them by which the rights of creditors are affected; but when the evidence clearly shows a transaction which, if it were between strangers, would be free of objection, we know of no valid reason why it shall be condemned simply because it is between husband and wife.

We are, for the reasons given, of opinion that the conveyance under which appellant claims has not been successfully impeached as having been executed in fraud of the rights of creditors.

The decree is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*