RACHAEL E. EARL

*v.*

HENRY S. EARL.

*Opinion filed June 21, 1900—Rehearing denied October 9, 1900.*

1. DEBTOR AND CREDITOR—*husband may in good faith prefer wife's bona fide claims.* A husband may in good faith lawfully prefer his wife and discharge any legally subsisting *bona fide* indebtedness to her, even though he thereby devotes to the payment of her demands the only property to which other creditors might resort.

2. SAME—*when wife's failure to obtain a deed before credit is extended does not defeat her rights.* The wife's failure to obtain a deed to property owned by her and held in her husband's name, before the debt was contracted, does not defeat her right as against a creditor's bill based on the judgment in which the debt was merged, where she obtained and recorded her deed some eighteen months before the creditor brought suit, and where she had been vigilant to obtain the legal title, never misleading or concealing anything from the creditor, who had notice of facts sufficient to put him on inquiry as to the wife's claims before she obtained the conveyance.

*Earl v. Earl,* 87 Ill. App. 491, reversed.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Ford county; the Hon. G. W. PATTON, Judge, presiding.

SAMPLE & MORRISSEY, for plaintiff in error.

M. H. CLOUD, for defendant in error.

Mr. CHIEF JUSTICE BOGGS delivered the opinion of the court:

This was a creditor's bill filed by the defendant in error, the prayer thereof being that two certain conveyances of real estate executed by Edwin F. Earl to his wife, the plaintiff in error, be declared fraudulent and inoperative as against the lien of a certain judgment in favor of the defendant in error and against said Edwin F.

Earl. One of the deeds was executed September 12, 1894, and purported to convey to the plaintiff in error an un-divided one-half interest in 52½ acres of land in Woodford county. The other was executed November 16, 1895, and purported to convey to the plaintiff in error certain town lots in the city of Paxton. The plaintiff in error and her husband resided in a dwelling situate on the town lots, it being their homestead. This property, for convenience, the respective counsel call the "home property," the other premises for the like reason being called the "Woodford county land." The circuit court decreed the conveyance of the Woodford county land fraudulent as against the judgment obtained by the defendant in error, but sus-tained the validity of the conveyance of the city lots, or home property. The Appellate Court, on appeal, re-versed the decree of the circuit court as to each of said properties, and adjudged the conveyance of the home property to be fraudulent as matter of law, but adjudged the conveyance of the Woodford county land to be *bona fide* and valid. This is a writ of error prosecuted by the defendant below, the complainant below having filed cross-errors, thus bringing the entire controversy before this court for decision.

The defendant in error and said Edwin F. Earl are brothers; the plaintiff in error and said Edwin F. Earl husband and wife. The conveyance of the home property will first be considered.

The plaintiff in error and said Edwin F. were married in 1862, and removed to the town (now city) of Paxton in 1869. In 1873 the father of plaintiff in error gave her $4000, to be devoted to the purpose of securing a home for her. In that or the succeeding year a dwelling house in the city of Paxton was purchased with a portion of the money, the title being placed in the husband. In 1875 the wife procured the property to be conveyed to her. They resided on this property until 1883, when they sold it and removed to the State of California for the reason

the health of a child demanded a change of climate. It does not appear a permanent home was acquired in California or that it was ever their settled intention to remain there. While in California, a farm which plaintiff in error owned, being a gift from her father, was sold for the sum of about $10,000, and the money was entrusted by the plaintiff in error to her husband to be invested in other lands for her. He was also entrusted with the moneys accruing from the sale of the homestead property, which belonged to the wife, for the purpose of investing it in a home for her when a settled place of abode should be determined upon. The family returned to Paxton in the following year, 1884, and in that year a property consisting of several lots, on which was situated a dwelling house, was purchased for $1800, the title being taken in the name of the husband. The husband invested the $10,000, the proceeds of the sale of the farm owned by the wife, in lands in Minnesota, taking the title in his own name but without her consent. In 1885 the family temporarily removed to Albert Lea, in Minnesota, but did not dispose of the Paxton property. While living in Albert Lea the wife procured the title to the Minnesota lands, which had been purchased with her money, to be conveyed to her. They returned to Paxton in 1885 or 1886. In 1887 a portion of the lots and the building which stood on other of the lots in Paxton were sold, and the building was removed to the lots that were sold, and a dwelling was constructed, at a cost of about $4000, on the lots which were retained. The title to these lots, it will be remembered, was in the husband. This is the property now called the "home property." It appears from the evidence the plaintiff in error in 1887 insisted the title to this property should then be conveyed to her, and from thenceforth persisted in the insistence until her demands threatened the harmony of the domestic life of the family. She and her daughter testified the husband admitted the title should and ought to be conveyed to her, admitted .

his willingness to have the conveyance made, but under various pretenses delayed the actual execution of the deed until 1892. In 1892 the husband mortgaged certain lands in order to procure funds to discharge certain indebtedness existing against him. It seems the plaintiff in error refused to join in the mortgage unless the husband would comply with his frequent promises to convey the home property to her. This resulted in the execution of the mortgage, and soon after of a deed to the wife for the home property in controversy, but whether the deed to the wife was acknowledged by the husband is a contested point. In 1893 the husband and wife joined in a deed conveying certain lands owned by the husband to the defendant in error in discharge of an indebtedness due to the defendant in error from the husband. The plaintiff in error contends this conveyance was in full discharge of all indebtedness due the defendant in error from her husband, and the testimony of herself and her daughters establishes she so understood the transaction, but it was clearly proven the indebtedness which was merged in the judgment entered in favor of the defendant in error against the husband of the plaintiff in error, though then existing, was not included in that transaction and has never been discharged. The deed made by the husband conveying the Paxton home property to the plaintiff in error was not recorded but was placed by the wife in a box belonging to her, wherein she kept other title papers and valuable documents relating to separate property of considerable value owned by her. Plaintiff in error insists the deed was not acknowledged by her husband, and that she did not record it for that reason, and that he did not acknowledge it although he repeatedly promised to do so. The husband finally, in some manner not clearly disclosed by the record but without the knowledge or consent of the wife, obtained possession of the deed and destroyed it. The date of the destruction of the deed, or when the wife was advised thereof, is not well established,

but it is clear, as we think, the deed was among the papers of the wife in the summer of 1894. The plaintiff in error, on being advised of the destruction of the deed by her husband, demanded the execution of another deed to her, and persisted in such demand until in November, 1895, after, as she and her daughter testified, many promises to make the deed and many failures to do so, the husband conveyed the home property to the plaintiff in error. The deed was not recorded until January 16, 1896. The judgment in favor of the defendant in error against his brother, the husband of the plaintiff in error, was entered December 17, 1897.

It is perfectly clear the conveyance of the home property to the wife was founded upon a sufficient and valuable consideration, and that, as between the husband and wife, the investiture of title to the home property in the wife was but an act of justice to the wife and was entirely lawful and proper, unless, as matter of law, it was fraudulent as to the defendant in error as a creditor of the husband. Such was the view of the circuit court and of the Appellate Court. On this point the Appellate Court remarked in the opinion: "According to the evidence the wife was a *bona fide* creditor of the husband. He was indebted to the wife, both legally and equitably, for the price of the homestead, and it was just and valid for him to execute and deliver a conveyance thereof to her." When the conveyance was made the husband was indebted to the defendant in error, his brother, and was insolvent or at least in financial embarrassment. But while these facts would, as matter of law, render inoperative, as against the defendant in error, a voluntary settlement by the husband of property on the wife, such facts would have no effect to prevent the wife from recovering the title to the property in payment of any *bona fide* indebtedness due her from her husband. The husband may in good faith lawfully prefer the wife and discharge any legally subsisting *bona fide* indebtedness to her, even

if he thereby devotes to the payment of her demands the only property to which other creditors may resort for payment of their claims. *Tomlinson* v. *Matthews*, 98 Ill. 178; *Frank* v. *King*, 121 id. 250.

The facts disclosed by the testimony would, as between the husband and wife, have justified a decree against the husband investing the title to the home property in the wife. The contention, however, of the defendant in error is, that at the time the debt merged in the judgment was contracted, the said Edwin F., his brother, was in the actual possession of said home property; that the title thereto appeared of record to be in his brother; that he, the defendant in error, believed his brother to be the owner of that property and extended credit on the faith of such ownership, and at various times, on the faith of the ownership of such property and in reliance on the written property statements made at different times by the brother showing he was the owner of such home property, refrained from demanding payment and enforcing collection of the debt due from his brother; that the plaintiff in error was negligent in not recording the deed made in 1892, and thereby allowing her husband to appear to the world as the real and true owner of such property.

The debt (except about $388) to the defendant in error was contracted March 1, 1891. It was for the balance of the purchase price of a tract of land sold by defendant in error to said Edwin F., the husband of plaintiff in error, for the sum of $7603.50, all of which sum was paid in cash except $1603.50, for which amount the personal note of said Edwin was accepted. He was then the owner of property in his own right, which, aside from the home property, entitled him to the standing and credit given him by the defendant in error. His financial trouble came later, through adventures in purchases and sales of pork and grain on the board of trade. The brothers, in December, 1891, entered into a written contract for the purpose

of dealing in pork and grain. The defendant in error contends the contract did not contemplate option transactions, but only purchases and sales of actual property. The brother Edwin, however, bought and sold grain and pork on options and heavy losses followed. The evidence tends strongly to show the defendant in error was interested in these transactions which resulted in the financial embarrassment of the brother Edwin. When the debt was contracted they were both men of property and means, and defendant in error before that entrusted his brother with much larger sums than the balance of $1603. The judgment included other indebtedness in the sum of about $388 for money loaned the said Edwin by the defendant in error in 1891, or then due on some transactions between them, which stood as an open account until July, 1893, when a note was given for it. It does not appear from the evidence the defendant in error accepted the personal note of his brother, Edwin, for the balance due on the purchase price of the farm, on the faith the brother was the owner of the dwelling property in Paxton. It is true, the 'defendant in error in after years required the said Edwin to make property statements, and that in these statements the home property was listed as the property of said Edwin. But the first of these statements was made in 1893, some two years after the debts included in the judgment were contracted, and a second property statement was made in January, 1894, and a third in February, 1896, the latter statement being after the home property had been conveyed to the plaintiff in error and after the deed therefor had been recorded. All these statements listed the home property as the property of the said Edwin. It is urged the defendant in error was induced to forbear the collection of his claims by these property statements and the apparent ownership of the homestead by the husband.

The situation disclosed by the record is, that the said Edwin F. was indebted to the defendant in error, and

was claiming to be, and appeared from the records to be, the owner of the homestead property; that the wife of said Edwin was the equitable owner of the homestead property and entitled to a conveyance from said Edwin, her husband, of the legal title thereto. The wife insisted the husband should make conveyance to her, and made such requests so repeatedly and with such persistence as to seriously threaten the peace of the family and the continuance of the marriage relation, that the husband finally conveyed the property to the wife in 1892. The defendant in error forbore the collection of his claims. The respective equitable rights of the wife and the defendant in error as a creditor of the husband are involved. The wife was justly entitled to the property conveyed to her by the husband, and there is neither suspicion nor grounds for suspicion of actual wrong or fraud to vitiate the conveyance. She was all the time unwilling her husband should retain the apparent ownership of the property; was ignorant, as we think the evidence shows, the husband was indebted to the defendant in error, but supposed she had, in joining in a deed to the defendant in error to convey him certain lands, fully discharged all the husband owed him. She was insistent and persistent in endeavoring to procure conveyance of the property from the husband, and succeeded in doing so before the defendant in error procured his judgment. Indeed, the deed to the wife for the home property had been upon the public records for more than a year and a half before defendant in error instituted suit against the husband.

The failure of the wife to have the deed signed by the husband in 1892 placed upon the record before he succeeded in abstracting it from among her papers and destroying it, constitutes, it is urged, negligence on her part which enabled the husband to mislead the defendant in error to forbear collection of the debt at an earlier period, when the husband was solvent. This, and this alone, is all that can be relied on to deprive the wife

of the ownership of the property which she is otherwise
equitably entitled to possess. She testified the deed
signed in 1892 was never acknowledged by the husband.
There was other evidence tending to show that convey-
ance was completed by the acknowledgment. But it is,
we think, not to be doubted the wife did not understand
it was acknowledged. ·She testified she frequently urged
her husband to acknowledge it; that he frequently prom-
ised to do so, and that she did not record it for that
reason. When she discovered the deed had disappeared
from among her papers she at once besought her husband
to execute a new deed, and continued such course until
she succeeded in procuring the execution of the deed
which was finally recorded. She did not record the lat-
ter deed for about two months after she received it,
but it is not contended anything occurred during that
period to mislead the defendant in error or to prejudice
his rights in any way. It is true that on two occasions
during the time the wife was so diligently endeavoring to
secure the conveyance of the home property to be made,
the husband sent property statements to the defendant
in error in which the home property was listed as the
property of the husband, but we think the defendant in
error had such knowledge of the fact the wife was claim-
ing the right to the title to the homestead, and endeav-
oring to secure the title thereto, as put him on inquiry
as to her real right and interest therein. Various letters
written by the husband to the defendant in error under
dates, respectively, of December 19, 1893, December 21,
1893, December 26, 1893, January 2, 1894, and January 4,
1895, introduced in evidence, disclosed and advised the
defendant in error that the wife was pressing the hus-
band to place the title to the homestead in her, and that
the harmony of the domestic affairs of the husband was
seriously affected by the persistent demands of the wife
that the deed for the home property should be made to
her. The husband in such letters, or some of them, de-

clared he would not convey the property to the wife, but the fact that the wife was insisting that the homestead should be conveyed to her was so clearly and forcibly made known to defendant in error in these letters that it could not have escaped his attention. The slightest effort on his part to learn the true situation from the wife would have resulted in full knowledge of the equitable rights and claims of the wife. She at no time sought or desired to conceal her claims to the property from him or any one else. Even though she should be deemed negligent in the matter of failing to record the deed made in 1892, yet he had from these letters such knowledge as made it incumbent upon him, before he could be permitted to deprive her of property equitably and justly belonging to her, to inquire as to her real right to a deed to the property. In point of equitable right he has no standpoint of advantage. She did not seek to mislead him, and he had such knowledge as would have enabled him to have avoided being misled in the matter. She succeeded in securing the title to the property of which she was justly and equitably the owner before he reduced his claims to judgment against her husband. His equity is not superior to that of the wife. She did nothing purposely to mislead him, and concealed nothing from him. He had such notice of her interests and rights as put him upon inquiry, and slight diligence would have advised him of the facts involved in her claim. She succeeded first in reducing her equity to a legal basis, and we can not assent to the view her right and title to the homestead property should be subordinated to his judgment. We think the chancellor arrived at the correct conclusion as to this branch of the case, and that the judgment of the Appellate Court should have affirmed the decree of the chancellor as to this home property.

We agree with the conclusion reached by the Appellate Court as to the deed made by the husband to the wife for the Woodford county land, and here insert with

approval the opinion of the Appellate Court as to that conveyance:

"We are next brought to consider the cross-errors assigned by appellee, Rachael E. Earl, and determine the validity of the conveyance of the Woodford county land. There is no evidence of intentional fraud in respect to this conveyance. The purpose of the conveyance was to enable the husband to pay a debt, which he did, and that was a laudable and legitimate object. It is contended in support of the decree in this respect, that because of inadequate price and the nature of the note given by Mrs. Earl the conveyance is fraudulent. We are not disposed to hold the price so far inadequate as to constitute a badge of fraud. A fair consideration of the evidence would seem to make the cash value of the 52½ acres $2500, which would be $1250 for the half interest, purchased for $1000. Appellee, Rachael E. Earl, paid $500 in cash to her husband and gave her note for the balance, payable when the land was sold. The evidence shows she has made no effort to sell the land and has no intention of doing so, which, we think, renders the note payable on demand; and the fact, if it be such, the husband has no intention of enforcing it against his wife is wholly ineffective against its validity, for it could be easily reached by garnishment at the suit of a judgment creditor of the husband, there being no question regarding the solvency of Mrs. Earl."

It follows from what has been said, the bill filed by the defendant in error cannot be sustained as to either of the premises in controversy. The judgment of the Appellate Court and the decree of the circuit court will therefore be reversed and the cause will be remanded to the circuit court, with directions to dismiss the bill.

*Reversed and remanded, with directions.*