## MARY J. EADS

*v.*

## CALVIN R. THOMPSON *et al.*

*Filed at Ottawa January 23, 1884.*

1. FRAUDULENT CONVEYANCE—*the particular case.* In this case it was sought, upon creditor's bill, to set aside a conveyance of land, made by the debtor, on the alleged ground it was intended to hinder and delay the complainant in the collection of his debt. On a consideration of the evidence it was not regarded as sufficient to authorize the relief prayed.

2. WITNESS—*credibility—husband testifying for his wife.* The testimony of a husband in favor of his wife, on a bill to subject land in her name to the payment of his debts, when not impeached must be regarded the same as that of any other witness having a personal interest or feeling as to the matters about which he testifies.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Henderson county; the Hon. JOHN J. GLENN, Judge, presiding.

The bill in this case is the ordinary creditor's bill, and was brought by Mary J. Eads, against Harvey Garrett, Eleanor Garrett, Thomas Garrett, William P. Thompson, Robert M. Thompson, and Calvin R. Thompson. The object of the bill seems to be two-fold,—first, to subject certain real property to the payment of a judgment recovered by complainant against Harvey Garrett, in the circuit court of Henderson county; and second, to discover assets in the hands of defendants, or some of them, that might be decreed to be paid on such judgment. On the hearing in the circuit court the bill was dismissed as to all the defendants except Harvey Garrett, Eleanor Garrett and Calvin R. Thompson, and the court rendered a decree providing that in case the judgment in favor of complainant was not paid within a certain time fixed, Eleanor Garrett and Calvin R. Thompson should con-

vey to the master in chancery certain real property, the title to which was in them, but which the court found equitably belonged to the judgment debtor, that it might be sold by such master, and out of the proceeds of such sale the judgment might be satisfied. On the appeal of Calvin R. Thompson and Eleanor Garrett the Appellate Court reversed the decree of the circuit court and remanded the cause, with directions to that court to dismiss as to the defendants appealing. Thereupon complainant brings the case to this court on error, as authorized to be done under the statute.

Mr. J. W. Davidson, Mr. J. Simpson, and Mr. W. C. Norcross, for the plaintiff in error:

Any transfer of real or personal property with intent to disturb, delay, hinder or defraud creditors, etc., is void. Rev. Stat. 1874, p. 540, sec. 4; *Annis* v. *Bower,* 86 Ill. 128; *Tunison* v. *Chamblin,* 88 id. 378; *Johnson et al.* v. *Johnson et al.* 98 id. 564; *Mann* v. *Ruby,* 102 id. 348; *Moore* v. *Wood,* 100 id. 457; *Bennett et al.* v. *Stout et al.* 98 id. 47; Kerr on Frauds, 196; 1 Story's Eq. Jur. secs. 337, 340, 342, 344.

Direct evidence of witnesses, speaking of their own knowledge of the fraudulent intent, is not required. It is sufficient to prove facts and circumstances strong enough to justify a jury in finding such an intent; nor is clear and indisputable evidence required to establish fraud. *Gill* v. *Crosby,* 63 Ill. 190; *Bowden* v. *Bowden,* 75 id. 143; *Emerson* v. *Bemis,* 69 id. 537; *Reed* v. *Nixon,* 48 id. 343; *Murry* v. *Bostwick,* 13 id. 398; *Carter* v. *Gunnels,* 67 id. 271.

Deeds made to defraud creditors are absolutely void. *Gould* v. *Steinburg,* 84 Ill. 170.

Indebtedness at the time of the transaction is evidence of fraud. *Phelps* v. *Curts,* 80 Ill. 109; Kerr on Frauds, 205, 206.

A voluntary conveyance to a wife or child, if the grantor is largely indebted, is presumptive evidence of fraud, and a

fraudulent intent will be presumed from the fact of indebtedness at the time. *Moritz* v. *Hoffman*, 35 Ill. 533.

We grant that a party, even though indebted, may convey property to his wife, child or other person, and such conveyance will be upheld, provided an abundance be left to pay the debts of the grantor. (*Giddings* v. *Watson*, 53 Ill. 186; *Pratt* v. *Myers*, 56 id. 587; *Bridgeford* v. *Riddle*, 55 id. 261.) But if a husband is insolvent, as is shown in this case by his own evidence, or if the conveyance is made with a view to indebtedness to be contracted, and with the intent to defraud, it will be fraudulent and void, and any creditor can attack it. *Bridgeford* v. *Riddle, supra; Crawford et al.* v. *Logan*, 97 Ill. 396; *Dunaway* v. *Robinson*, 95 id. 419.

· Messrs. STEWART & STEWART, and Mr. R. J. GRIER, for the defendants in error:

It is true fraud may be proved by circumstances, but they must be such as will justify the inference. (*Reed* v. *Nixon*, 48 Ill. 323.)   And if the facts and circumstances proven, or the motive and design of an act, can be attributed to an honest motive as well as to a corrupt one, the court should attribute it to the honest motive. *Bowden* v. *Bowden*, 75 Ill. 143; *McConnell* v. *Wilcox*, 1 Scam. 344.

Fraud must be proved, as it will not be presumed. *Wright* v. *Grover*, 27 Ill. 426; *Blow* v. *Gage*, 44 id. 208; Bump on Fraudulent Conveyances, 192.

Both parties must participate in the fraud and the fraudulent intent. *Ewing* v. *Runkle*, 20 Ill. 449; *Meyers* v. *Kinzie*, 26 id. 36; *Gridley* v. *Bingham*, 51 id. 153; *Hatch et al.* v. *Jordan*, 74 id. 414.

The fact that the parties are related is not alone sufficient to prove fraud. *Nelson* v. *Smith et al.* 28 Ill. 495; *Wightman et al.* v. *Hart*, 37 id. 123.

An insolvent debtor may dispose of his property, and the purchaser will be protected, unless the evidence shows satis-

factorily that he was actuated *mala fides.* Ill. Statute of Frauds, sec. 5; *Wadhams* v. *Humphrey,* 22 Ill. 661; *Nelson* v. *Smith et al.* 28 id. 495; *Wood et al.* v. *Shaw et al.* 29 id. 444; *Hesing* v. *McCloskey,* 37 id. 341; *Miller et al.* v. *Kirby,* 74 id. 242.

The motive with which an act is done makes no difference, if the act is legal. *Funk et al.* v. *Staats,* 24 Ill. 633; *Gray* v. *St. John,* 35 id. 222; *Hesing* v. *McCloskey,* 37 id. 341; *Francis* v. *Rankin et al.* 84 id. 169; *Kyger* v. *F. Hull Shirt Co.* 34 Ind. 249; Bump on Fraudulent Conveyances, chap. 7.

Purchasing with notice of the insolvency of the vendor, does not make the transaction fraudulent. *Beals* v. *Guernsey,* 8 Johns. 446; *Bliss* v. *Ball,* 9 id. 131; *Sisson* v. *Routh et al.* 30 Conn. 15; *Loeschigh et al.* v. *Bridge et al.* 42 N. Y. 421.

Mr. Justice Scott delivered the opinion of the Court:

The case in this court is confined within much narrower limits than it was when heard in the circuit court. That court dismissed the bill as to all the defendants except the judgment debtor and Eleanor Garrett and Calvin R. Thompson. Complainant neither appealed from that decree nor assigned cross-errors. It must therefore be understood she acquiesced in that decision. In so far as the bill contained allegations against parties as to whom it was dismissed, it will not now be considered.

Narrowing the inquiry, then, as must be done, to the lands it is charged that equitably belong to the judgment debtor, but the title to which is in defendants Eleanor Garrett and Calvin R. Thompson, the discussion need not be elaborated to any great length. The transaction, so far as Thompson is concerned, will be first considered. It appears that Coleman Garrett died July 6, 1878, leaving quite an estate, consisting of real and personal property. Harvey Garrett, the judgment debtor, was a son of the intestate, and one of nine heirs to his estate. On the 1st day of March, 1879, Harvey

Garrett entered into a contract with Calvin R. Thompson, by which he sold to Thompson his interest in his father's estate. The consideration to be paid was $800, of which sum $200 was paid in cash, and Thompson gave his notes for the balance, which he afterwards paid. It is that sale of the property complainant seeks to impeach as fraudulent as to her, and have the land subjected to the payment of her judgment. That, it is thought, can not be done. At the time Harvey Garrett contracted to sell his interest in his father's estate, complainant had then recovered no judgment against him. Her judgment was not recovered until the 26th of March, 1879, and no execution was issued on the judgment until the 10th of March, 1880. Prior to making the sale of his interest, it seems a division of the lands belonging to the estate of Coleman Garrett had been agreed upon among the heirs, and by that arrangement Harvey Garrett would get twenty acres lying next to Calvin R. Thompson, off an eighty acres situated in Warren county. On making the contract Thompson took possession of this land, and leased it to Harvey Garrett, at and for a sum agreed upon. The next year he leased the same to Eleanor Garrett. Afterwards Thompson received a deed for this land, and since the making of the contract he has been, and now is, in possession of it, either by himself or his tenants, and claims to be the absolute owner. There is but little in the record that tends to impeach the fairness of this sale. It is fully proven that Thompson bought the interest of Harvey Garrett in his father's estate, and paid him the price agreed upon in actual money. The contract was made at a time when there was no judgment against Harvey Garrett, and if done in good faith there can be no reason why it may not stand. That which is most confidently relied on as indicating fraud, is, first, the relationship of the parties; second, the pendency of complainant's suit against the vendor; and third, inadequacy of price. The relationship of the parties, if the sale was

otherwise fair, would not, of course, render it fraudulent. It is not certainly proven that Thompson knew of the pendency of complainant's suit when he purchased Harvey's interest in his father's estate; but if he did, that would not render it unlawful for him to buy the land, if done in good faith. It may be the price agreed to be paid was less than the real value of the property, but the inadequacy of price is not so great as to raise any presumption of fraud that would prevail over the positive testimony of the parties as to the good faith of the sale. On the whole evidence, fully considered, no sufficient reason appears for declaring the sale to Thompson fraudulent, and it must therefore be permitted to stand.

Coming now to consider the case against Eleanor Garrett, it is seen she claims to have bought of James, William and Isaac Garrett the sixty that remained of the eighty acres in Warren county after the sale of the twenty acres to Thompson, and also to have bought a tract of land, consisting of sixty-four acres, of David S. Steers, and to have paid for the same with her own money. On the other hand, it is claimed these lands were bought with funds belonging to Harvey Garrett, and therefore equitably belong to him, and that the deeds were taken in the name of Eleanor, his wife, to hinder and delay complainant in the collection of her judgment against Harvey Garrett. On this branch of the case the evidence contained in the record is very voluminous, and covers the transactions of the parties for quite a number of years. It would answer no good purpose to enter upon any particular analysis of the testimony. It would extend this opinion to an unreasonable length. It has been considered with that care the importance of the case demands, and it is sufficient to state the impressions it makes on the mind. There is positive testimony the money that paid for these lands was in fact the money of Eleanor Garrett, derived from sources other than her husband, the judgment debtor. That she obtained some money from her father's estate is conceded.

Documentary evidence introduced tends to show she did not receive the amount necessary to buy these lands, from her father's estate. That may be so, but this evidence is not of itself of a character sufficient to overcome the positive testimony only her money was used in buying these lands. There is some evidence she had money from other sources. It is true the testimony as to the money used in buying these lands comes mostly from the husband of defendant claiming the lands as her own. He is not impeached, and his testimony is to be regarded as the testimony of any other witness having a personal interest or feeling in the matters about which he testifies. Many of the transactions between the judgment debtor and his wife are by no means free from suspicion as to their fairness. But much as the good faith of some of their transactions in regard to personal property may be distrusted, still there is positive testimony defendant bought these lands with her own money, as any one else would do. That she had some money of her own to use for that purpose, admits of no doubt, but whether she had enough with which to buy and pay for all these lands, is purely a question of fact, depending for its solution on conflicting evidence. It has been seen there is evidence tending to show she had sufficient money of her own to pay for all the lands conveyed to her, and that principal fact is not disproved by the circumstances proven. The whole record considered, it is thought the judgment of the Appellate Court directing the bill to be dismissed as to the remaining defendants, is warranted by the law and the evidence, and must be affirmed.

*Judgment affirmed.*

Mr. JUSTICE MULKEY, dissenting:

I do not think all the facts affecting the merits of this case are fully presented by the opinion of the majority of the court, or by the statement which precedes it, and I am clearly of opinion, when all the facts are carefully considered, the

decree of the circuit court, in so far as it affects the parties before this court, was fully warranted, and that it should therefore have been approved by the Appellate Court, and that the Appellate Court erred in not doing so.

WALKER and SCHOLFIELD, JJ., also dissent.