SARAH FLEMING

V.

SAMUEL G. WEAGLEY ET AL.

*Practice—Fraudulent Conveyances—Cross-Bill—Attempt to File without Leave of Court—Not Constructive Notice—Laches—Husband and Wife—Husband as Witness.*

1. A paper filed by a third party in an equity case, purporting to be a cross-bill, without leave of court, is not constructive notice to the parties to the action of the claims therein set up.

2. Whether or not the complaining party in an equity suit has been guilty of such *laches* as to bar his right to relief depends largely upon the circumstances of the particular case, and the final decision of the question is largely committed to the chancellor.

3. In an action by creditors of the husband to set aside a conveyance of real property made to the wife by the husband, the latter is a competent witness for the wife.

4. The husband has the right to prefer the claim of his wife to that of other creditors.

5. In the case presented, this court holds that there was no sufficient evidence to impeach the conveyance to the wife as fraudulent, the creditor not having any lien at the time the conveyance was made, and there being evidence to show that the property in question was purchased with funds derived from the wife's estate.

[Opinion filed November 23, 1889.]

APPEAL from the Circuit Court of Morgan County; the Hon. C. EPLER, Judge, presiding.

Mr. M. T. LAYMAN, for appellant.

Messrs. BROWN & KIRBY, for appellees.

PLEASANTS, P. J.    On March 4, 1883, Weagley and Boyce, as creditors of Robert C. Johnson, filed their bill in chancery, to set aside a deed of conveyance by said Johnson and Eliza J., his wife, to Martin H. Cassell, of certain lots in Jacksonville, executed on the 17th of August, 1876, and another of the same date from said Cassell to said Eliza J., of the same lots, and to subject said lots to the payment of their claim. The three parties to these deeds only were made defendants.

On the 13th of June, 1883, Johnson and his wife filed their answer denying the fraud charged in the bill, and setting up several distinct defenses—among others, that before the execution of these deeds the equitable title to said lots was in Mrs. Johnson, that complainants' claim arose out of transactions subsequent to the execution of said deeds, of which complainants then had notice, and that the defendant Robert C. Johnson retained an abundance of means to pay all his existing liabilities.

On the 19th of September, 1883, appellant here filed a paper in the case which purported to be a cross-bill, rehearsing the facts alleged in the original bill, and averring that at the time of the execution of said deeds she held a note signed by said Johnson as surety, for $850; that at the May term, 1877, she obtained judgment thereon against him and Peter Tilton (the principal) for $1,038.89 and costs, on which execution was

issued July 9, 1877, and returned October 5, 1877, unsatisfied; that this judgment was prior to that of Weagley and Boyce, who, with the defendants in the original bill, are named defendants; and that said conveyances were fraudulent and void as to creditors. It asks that they be set aside and the lots sold to satisfy her judgment, and for general relief.

After several continuances, on motion of the complainants in the original bill, this paper was stricken from the files December 13, 1887, for the reasons that appellant was not a defendant to the original bill and had filed the paper without an answer and without the leave of court. She then obtained leave to interplead as defendant to said bill, and to answer the same and file a cross-bill, and in pursuance thereof, on the 26th of that month filed her answer denying, on information and belief, the allegations of the bill, and averring as in the paper that had been stricken, and also re-filed that paper as a cross-bill.

The defendants Johnson and wife answered this cross-bill, admitting the note, judgment, execution and return as therein alleged, and that said judgment was prior to that of Weagley and Boyce, but denying that she had any lien upon the lots at the time of the conveyances attacked, or that they were made to defraud creditors, and claiming that the lots had been purchased with money of Mrs. Johnson and the equitable title was in her. They also claimed that the statute of limitations had run against her judgment before she filed the cross-bill. Weagley and Boyce also answered, denying all the material allegations in said cross-bill. Appellant afterward obtained leave to amend it, and on the 27th of December, 1888, filed an amendment averring that her judgment was revived by *scire facias* on May 19, 1888, that execution on the revived judgment was issued September 8, 1888, and returned unsatisfied, and that said judgment is in full force.

The amended cross-bill was dismissed on motion of defendants for the reason that when the original was filed she had no enforceable judgment; but leave was given her to withdraw and re-file it as an original, which she did. The defendants Johnson answered as to the former cross-bill and

amended cross-bill, setting up the same grounds of right to make the conveyances complained of as were stated in their answer to the original bill, denying that the judgment of appellant had been revived and execution thereupon issued and returned as alleged, and claiming that by her own *laches* she had lost whatever right she might have had to the relief here sought.

The issues having been made up and proofs taken, the court, on final hearing, dismissed both the original and cross-bills, from which decree, so far as related to the cross-bill, the complainant therein took this appeal.

On what particular ground the court based its action, we are not advised. The premises in question are the homestead of the appellees; the conveyances assailed were recorded on October 9, 1876, and the appellees have been in actual occupation of them continuously from that time. Appellant's judgment was obtained in May, 1877. If she can be said to have asserted her claim in September, 1883, when she filed the paper that was stricken, there was a long delay for which no reason has been given. But that paper was not constructive notice to appellees of the claim here made, and whether they had actual notice of it or of that paper before December, 1887, when the motion was made to strike it from the files, does not appear. If they had, it was no better than a verbal notice given on the street, which would not be an act of diligence in the sense of the law. The earliest assertion of her present claim that could be considered effective was made December 26, 1887, and that was when her judgment could not have been enforced against any property of Robert C. Johnson. And since what is *laches* depends so much upon the special circumstances, its determination is so far committed to the chancellor that if he regarded the neglect and delay here appearing as sufficient reason for dismissing the cross-bill we ought not to overrule his judgment. But whether he did so regard it we are not advised; and in another view of the case we deem it unnecessary to express our own opinion upon that question. That view makes it also unnecessary to decide whether the amount and character

of the property retained by Johnson would justify the gift of that in question to his wife. We think the decree was fairly supported by the evidence tending to show that these conveyances were not without a valuable and sufficient consideration.

Johnson married his wife in 1856. They both testified that in 1861 her father purchased and caused to be conveyed to her certain lands, which she sold to Charles Pratt for $2,300; that it was then expressly agreed between them that this money should be invested for her benefit, and when, with the profits, it should come to be enough to pay for a home for herself and children, satisfactory to her, it should be so applied and the deed therefor be taken in her name. He states a series of purchases and sales following, in each instance at an advanced price, and that these purchases were made, first, with the money received from Pratt, and thereafter with the proceeds of preceding sales; that with a portion of the money so increased he purchased of R. G. Grierson, on March 20, 1869, for $2,250, the lots in question, then unimproved, and for the house he built thereon and the other improvements paid $6,450, out of the same fund, and other money from her share of the proceeds of Missouri land belonging to the estate of her father; that not a dollar of his own means was put into the property; and that, though he took the deed on the several purchases mentioned in his own name, he believed his wife did not know it. All of the deeds referred to were put in evidence, and so far as they go, confirm his statements and show an increase of the fund to $6,000.

Mrs. Johnson testified to the same express agreement with her husband, to the same understanding as to the investments, and to her ignorance of the fact that the deeds of the lands so purchased were not in her name, until just before the conveyances here in question were executed. Appellant then had no lien on the property.

There was no evidence in contradiction of any of these statements. On behalf of appellant, Mrs. Loar, a near neighbor and intimate friend of the Johnsons, stated that she heard both of them at different times speak of these conveyances about the time they were executed — Mr. Johnson, she

thought, before that time—but was uncertain as to dates. The substance of what they said, as she understood it, was that they were made or to be made "to keep from paying this security debt of Mr. Tilton." Mr. Johnson stated that he had no recollection of any such remark and was not clear as to any conversation with her on that subject, but might have said to her he owed his wife, or had this arrangement with her, and thought it his duty to make this title in her before he paid any security debt. Mrs. Johnson denied that she so stated, and said she did not then know her husband was security on a note of Tilton, or indebted on any note.

Appellant also took and introduced the deposition of Mrs. Boyce, the widow of Mrs. Johnson's brother; but as it all related to gifts of money by their father to his children— inferentially of $500 to each—long before his gift to Mrs. Johnson of the land from which they claim to have derived the means that paid for their homestead, we fail to see its relevancy here. It does not tend to disprove that claim.

And if their testimony is to be believed this homestead property was specifically due from Johnson to his wife. At the time of these conveyances there was no lien upon it. He had a right to put the title in his wife for the purpose of securing it to her against any that were threatened. The statement to Mrs. Loar, as she relates it, is no evidence of an intention to defraud appellant, although the effect of the conveyance was and was intended to be to prevent her from making her debt out of that property. He had the right so to prefer the claim of his wife. Tomlinson v. Mathews, 98 Ill. 178, and cases there cited. He was a competent witness for her. Eads v. Thompson, 109 Ill. 87.

The court properly overruled the offer of appellant to prove that the controversy with Weagley and Boyce had been compromised and settled. It could have no bearing on any issue between her and the Johnsons. Perceiving no error in this record the decree will be affirmed.

*Decree affirmed.*