## COON et al. *v.* RIGDEN.

1. Instructions given or refused by the court below cannot be reviewed by this court where the exception to them is general.

2. Where a sheriff is a party to a cause pending in the probate court the coroner is the proper officer to execute process issuing out of such court in such case.

3. Regularly, when a sheriff is a party to an action, his official character should appear by allegation in the declaration, or by suggestion of record; the courts, however, will, in the first instance, take judicial notice of who are their officers.

4. Trespass will lie against an officer who takes the goods and chattels of the owner on an execution or attachment against a third person. To maintain the action the plaintiff must show actual or constructive possession, or general or special property in them, and a right to the immediate possession.

5. The title to chattels may pass, though the possession may not change.

6. No man will be permitted to set up his own fraud as a basis or claim for his own benefit.

7. The term " subscribed " in the statute (R. S., p. 389, § 12), held to be a substitute for the word " signed " in the English statute, and as requiring a signature at the end of a written or printed instrument.

8. In contemplation of the statute (Laws 1874, p. 185), a *femme covert* is no longer *sub potestati viri* in respect to the acquisition, enjoyment and disposition of real and personal property.

9. The care and control of the wife's property by the husband will not *per se* operate to defeat the wife's right as against the creditors of the husband

*Error to County Court of Larimer County.*

TRESPASS *de bonis asportatis.*     Plea not guilty and two special pleas, the first being :

A plea of confession and avoidance, setting up a levy of an attachment writ upon the property in question, at the suit of Yeager against John H. Rigden, and that the property was the property of John H. Rigden, and in his possession at the time when, etc.     *Second, actio non,* "because they say that after the said defendant the said Marcus Coon had executed the aforesaid writ of attachment on said property, described in said declaration herein, and had taken said property into his actual possession, to wit: on the 21st day of April, 1877, and before the commencement of this action, and after the committing of the supposed trespass alleged in said declaration, the said defendant herein, Joshua Yeager and John H. Rigden, the husband of the said plaintiff herein, made and entered into a written agreement that said attachment levy might remain on said property, being the property described in the declaration herein, and not be released except said John Rigden could sell it or part thereof, and pay the amount of said sale to said defendant, Joshua Yeager, which agreement is in words

and figures as follows, to wit : 'This agreement, entered into the 21st of April, 1877, between Joshua H. Yeager of the first part, and John H. Rigden of the second part, witnesseth : That whereas, the said party of the first part did on the 20th day of April, 1877, institute a suit by attachment, in the district court of the county of Larimer, against the said party of the second part, to secure a certain demand against him, and, whereas, the sheriff of said county levied said writ on certain property of said party of the second part, this day, now, therefore, it is hereby stipulated and agreed, that said attachment levy shall remain on said property, and that in the meantime said party of the second part may have three months to pay and satisfy so much of the said attachment claim as the note amounts to, and that if he can sell any of the property attached he shall have the same released, provided he pays what the property sells for, to the party of the first part, to apply on the claim sued on, and the party of the first part hereby remits ten dollars of the amount of the attachment costs. It is also hereby stipulated that the party of the second part hereby relinquishes all the right, title and claim to the possession of a herd of cattle, as per agreement entered into between said parties on the 11th day of December, 1875. And said party of the second part hereby agrees to go to work immediately and gather and hunt up all the cattle belonging to said party of the first part that can be found, and account for those which cannot be found, and deliver them up to said party of the first part, and fully pay and satisfy and indemnify said party of the first part for all loss, costs and expenses herein and under said agreement, except the sum of ten dollars costs remitted. The party of the first part is to furnish two hands to assist in gathering said stock, and after all said cattle are gathered in and accounted or paid for, and all the expense and costs paid as aforesaid, and said attachment satisfied, the said suit is to be dismissed by said party of the first part, at defendant's cost. It is also agreed that the party of the first part shall take the

cattle from the ranch of the party of the second part in said county as fast as they can be found, free of charge against the party of the second part, and is not bound to furnish the two hands to gather in the stock as herein stipulated.

(Signed)                    J. H. Yeager,
                            J. H. Rigden.'

And the defendants say that the 'stock and goods and chattels mentioned in the aforesaid agreement are the same and none other than the said goods and chattels described in said declaration herein, and that they are the same goods and chattels now held by virtue of said writ of attachment, and none other; and that said agreement is still in force and unsatisfied; and that the said goods and chattels referred to in said agreement held by said attachment are the same and none other than the goods and chattels described in said declaration proven the property of said John H. Rigden when they were attached and liable to be attached at the county aforesaid, and this the defendants are ready to verify. Wherefore they pray judgment, etc."

To which the plaintiff replied that the property in the said goods and chattels was not in the said John H. Rigden, as in said pleas alleged, but in the said plaintiff.

The other facts are sufficiently stated in the opinion.

Mr. G. Berkley and Mr. E. V. Price, for plaintiff in error.

Messrs. Hughes & Welborn, for defendants in error.

Elbert, J.   Under date of February 15, 1876, John H. Rigden sold to J. H. Yeager, certain cattle and other chattels, giving a bill of sale of the same. On the 18th of April following, Yeager sold the same property to Caroline Rigden, the wife of J. H. Rigden, the first vendor, also giving a bill of sale therefor. On the 20th day of April, 1877, Yeager sued out of the district court for the county of Larimer a writ of attachment against the goods and chat-

tels, lands and tenements of the said John H. Rigden, which was levied by the sheriff upon the property thus transferred, as the property of J. H. Rigden.   On the 23d of May following, Caroline Rigden, the wife, brought an action of trespass in the county court of Larimer county, against Yeager, the plaintiff in the attachment suit, and Marcus Coon, the sheriff, who made the levy.   Trial was had in the trespass suit at the June term, resulting in a verdict in favor of the plaintiff for $1,600.

The defendants, Yeager and Coon, bring error.

The instructions in this case, both given and refused, cannot be reviewed·in this court as the exception to them is general.   Such an exception we have repeatedly held insufficient.   *Webber* v. *Emmerson*, 3 Col. 248 ; *The Kansas Pacific R. R.* v. *Ward*, *ante*, p. 30.

The remaining assignments we will consider in their order.   A motion was made to quash both the summons and venire, as being improperly directed to and served by the coroner.   Section 3, Article 5, R. S., p. 180, provides that the coroner shall serve and execute process of every kind, and perform all other duties of the sheriff when the sheriff shall be a party to the case.   *   *   *   *   This is a special provision for the service of process in suits where the sheriff is a party, and controls and limits section 33 of the act concerning probate courts, R. S., p. 527, which provides that "all process issued by or out of said probate courts, shall be directed to the sheriff or any constable of the proper county."

The probate (now county) court is a court of record.   The sheriff is an officer of all courts of record in his county, and the same reason exists for holding this provision applicable to the probate as to the district court.   Both motions were properly overruled.   Regularly we think, when the sheriff is a party, his official character should appear by allegation in the declaration or by suggestion of record.   Courts, however, take judicial notice of who are their own officers, and, in the absence of any proof to the

contrary, the court in this instance was justified in presuming the identity of the defendant and the sheriff.

In the absence of any showing that the defendant Coon was not the sheriff of that name, the court was not called upon to quash the writs, nor was the defendant entitled to judgment on his pleas.

The matter set up in the two special pleas would not avail as a bar to a recovery, unless Rigden, the husband, was the owner of the property attached. His agreement that the property attached should remain subject to the attachment was without force or effect, unless the title to the property was in him. There is no allegation that in making this agreement he acted as agent of his wife. The replication, therefore, in denying the ownership of Rigden, went to all that was material in the pleas, and the defendant's motion for judgment, upon the ground that his special pleas were not traversed, was without merit.

The objection that the verdict was against the evidence resolves itself into two propositions:

1st. That there was not sufficient evidence that the plaintiff had either a general or qualified property in the chattels which were the subject of the trespass.

2nd. That there was not sufficient evidence of possession, either actual or constructive, to maintain the action.

Trespass lies against an officer who takes the goods and chattels of the owner, on an execution or attachment against a third person. *Gauche* v. *Mayor*, 27 Ill. 134; *Hessing* v. *McCloskey*, 37 id. 341.

To maintain the action, the plaintiff must have had, at the time of the commission of the injury, the actual or constructive possession of the goods, or general or special property in them, and a right to the immediate possession. 1 Waterman on Trespass, § 521, and cases there cited.

Treating the sale by Rigden to Yeager, and the subsequent sale by Yeager to the plaintiff, as a *bona fide* transaction, there was abundant evidence to show property in the plaintiff. There was a bill of sale to her from the

defendant, Yeager, and his receipt for the purchase-money. It was also in evidence that the property was originally purchased with money which the wife had received from her relatives in England, and that the note of Yeager, held by her, represented a part of this money. There does not appear to have been any actual delivery under either sale; nor as between the parties was any actual delivery necessary. The title to chattels may pass though the possession may not change. In each case, the possession remained with Rigden. Whether he acted as the agent of the wife, in holding the cattle, need not be determined. She was the general owner, and, as such, had the right to immediate possession, and this was all that was required for the maintenance of the action. 1 Waterman on Trespass, *supra.*

It is insisted, however, that the respective transfers were made with a fraudulent view of putting the property into the hands of the wife, and beyond the reach of the creditors of the husband. There was some evidence going to show, that such was the purpose, whether sufficient or not, we need not inquire. If such was the character of the transaction, the defendant, Yeager, was a party to it, and may not impeach it. He executed a bill of sale to the plaintiff, acknowledging the receipt of the purchase-money, and, in the absence of any fraud touching its execution, he is not in a position to question its *bona fides* as a creditor of Rigden, the husband.

A conveyance to defeat creditors is good as between the parties and their representatives. It is not competent for either party to impeach the provisions of such a contract on the ground that it was intended as a fraud on creditors, for the general principle of law, that no man shall set up his own fraud as the basis of a right or claim for his own benefit, would clearly apply. Benj. on Sales, § 490.

It is objected, however, that the bill of sale from Yeager to the plaintiff was not *subscribed* as required by the 12th section of the Statute of Frauds (R. S., p. 339), and was void.

VOL. IV—36

The bill of sale recites the sale, specifies the several chattels sold and their separate as well as aggregate value. Across the face of this are written the words "Received of Caroline Rigden, the sum of eleven hundred and twenty-five dollars."

Our statute requires that the memorandum shall be subscribed by the party to be charged. The term "subscribed" is a substitute for the term "signed," used in the English statute, 29 Charles, and is held, "in its habitual use, and according to both its popular and literary signification, to require a signature at the end of a printed or written instrument." *James* v. *Patton*, 2 Seld. (N. Y.) 13; *Davis* v. *Shields*, 26 Wend. 350.

The bill of sale and the receipt are evidently but parts of an entire contract. The one evidences the sale, and the other the payment of the purchase-money. Why it was written across the face of the bill of sale does not appear. It may have been for want of space at the bottom of the page, or the whim of the party who drafted it. It is immaterial. The receipt stands at the end of the contract, and is subscribed by Yeager. This is a subscription of the entire contract as much as if the receipt followed the bill of sale upon the same or the next page. To say otherwise would be an unwarranted refinement in testing the ordinary business transactions of daily life by the requirements of the statute.

The laws of this State contemplate and provide for the independent acquisition and enjoyment of a separate estate by the wife. In the case of *Wells* v. *Caywood*, 3 Col. 487, it is said "in contemplation of the statute, whatever may be the actual fact, a *femme covert* is no longer *sub potestate viri*, in respect to the acquisition, enjoyment, and disposition of real and personal property. The statute asserts her individuality and emancipates her in the respects within its purview from the condition of thraldom in which she was placed by the common law."

It is claimed, however, in the case at bar, that the plain-

tiff has subjected her separate property to liability for the debts of her husband by reason of the care and control which she allowed him over it.

The doctrine as claimed is too broad. The care and control of the wife's property by the husband will not, *per se*, operate to defeat the wife's right as against creditors. To say that, being the *bona fide* owner of personal property, she may not allow her husband to have the general care of it, that he must avoid any contact with or custody of it, on peril of subjecting it to his debts, would be practically to annul the statute, or demand a separation of interest incompatible with the marriage relation. The husband is the customary guardian of his wife's property, where it does not pertain to the household. Had the law in terms forbidden his care and custody, its provisions in the wife's favor would have been practically useless. She could not have availed herself of them except by living separate and apart from her husband.

The legislature must have foreseen this natural and necessary agency. It is founded on the marital relation; in his physical strength and her physical weakness—in that division of duties which is universal, assigning to the husband the field, and to the wife the house. They must have also foreseen the temptation and opportunity for fraud and collusion upon the part of the husband and wife as against creditors. Notwithstanding this, they enacted the law and left its abuses to be guarded against by the prudence of parties dealing with them, and the power and disposition of courts to track the intricate windings of fraud and defeat its machinations.

Should the wife permit the husband to deal with and sell her separate property as his own, or obtain credit upon it as his own, undoubtedly this would be a fraud against which courts would extend their protection. *Patton* v. *Gates*, 67 Ill. 166.

So, too, it has been held that when the wife places her money in the hands of her husband for the purpose of car-

rying on a general trade, although in the wife's name, and the husband by his labor and skill, extending through a series of years, increases the fund, the entire capital embarked in the enterprise will be liable for his debts. *Wilson* v. *Loomis*, 55 Ill. 352; *Watman* v. *Price*, 47 id. 22; *Elijah* v. *Taylor*, 37 id. 249.

But the case at bar does not come within the reason of the rule laid down in any of these cases. The plaintiff testified that the property was purchased originally with her own money, received by her from relations in England; that they carried on a dairy, and that her husband as her agent had the general care of the cows ; that upon the sale to Yeager by her husband, he transferred to her Yeager's note for the amount of the purchase-money as property belonging to her. The testimony of the husband is to the same effect.

The husband appears to have had the care of the cattle both before and after the sales referred to. That Yeager left the cattle in his charge after his purchase, is accounted for by the fact that he was herding other cattle for Yeager under a contract.

It does not appear that he held himself out to Yeager as the owner of the property, or obtained credit from him in any way as the apparent owner. It does not appear that, at the time the indebtedness to Yeager was incurred, the cattle had been purchased. There was no concealment of the wife's claim to the property ; there was no claim of ownership by the husband by which Yeager was misled ; on the other hand, there was full knowledge on the part of Yeager of the wife's ownership, derived through himself. At least the jury must have so believed and found.

Under such circumstances, to say that the general care and supervision, which the husband exercised over the property, will operate to defeat the wife's claim and right to it, would be to defeat the full intent and purpose of the statute, and render the independent acquisition and enjoyment

of property by the *wife*, dependent upon onerous and une-qual conditions. *Dean* v. *Bailey*, 50 Ill. 482.

There is, therefore, no reason for reversal on the ground that the verdict is unsupported by the evidence; on the other hand, we think it in harmony with the weight of evidence.

There was more or less evidence admitted which was objectionable as being immaterial, but we are unable to see that the defendants were in any way prejudiced thereby.

These are all the assignments regarded as necessary to consider.

The judgment of the court below is affirmed with costs.

*Affirmed.*