Rice v. Sayles.

*Reversed and remanded.*

## CHAUNCEY H. RICE
v.
## JANE ANN SAYLES.

*Replevin—Husband and Wife—Ownership of Personal Property—Presumption—Fraudulent Conveyances—Statutes.*

1. Where husband and wife reside together as such, even though boarders are kept in the house, the presumption of law is that the goods, chattels and personal property in the house and in their joint possession, are the property of the husband.

2. The ownership of the personal property is not affected by the inefficiency of the husband as a business man and the energetic character of the wife, even though she controls the husband and in large measure the business in which they are engaged.

3. Conveyances of personal property by the husband to a third party and by him to the wife, there being no change of possession and no consideration therefor, are in conflict with the statute requiring conveyances of goods and chattels between husband and wife to be acknowledged before a Justice and recorded, and are fraudulent in law, if not in fact.

4. Where one has or claims an interest in a particular business, he will be conclusively presumed, as to third parties, to have such knowledge and notice of the way in which it is conducted, as in the discharge of his plain duty he might or ought to have obtained.

[Opinion filed June 9, 1887.]

APPEAL from the County Court of Lake County; the Hon. F. E. CLARKE, Judge, presiding.

Messrs. WHITNEY & UPTON, for appellant.

Where husband and wife are living together as such, the presumption of law is that the husband is the head of the family, and the owner of all personal property in his possession or in the apparent possession of the wife, or joint possession of the husband and wife. Flynn v. Gardner, 3 Ill. App. 253; Reeves v. Webster, 71 Ill. 307; Farrell v. Patterson, 43 Ill. 52; Laing v. Day, 8 Ill. App. 631; Clinton v. Kidwell, 82 Ill. App. 427; Langford v. Grierson, 5 Ill. App. 362.

If a wife allows her husband to use her capital as his own, and thereby obtains credit on the faith of his being the owner of property purchased with such capital, she will not be allowed to interpose her claims to the property so acquired to the injury of her husband's creditors. Hockett v. Bailey, 86 Ill. 74; Guill v. Hannay, 1 Ill. App. 490; Wilson v. Loomis, 55 Ill. 352; Wortman v. Price, 47 Ill. 22; Patton v. Gates, 67 Ill. 164; Robinson v. Brems, 90 Ill. 351.

The statute of this State, in relation to the property of married women, does not allow the wife to appropriate the results of her husband's labor to the exclusion of the rights of the husband's creditors. Such a transaction as is contemplated by the fourth instruction will be regarded as an attempt to do indirectly that which can not be done directly. Card v. Robinson, 2 Ill. App. 19; Guill v. Hannay, 1 Ill. App. 490; Robinson v. Brems, 90 Ill. 351; Hockett v. Bailey, 86 Ill. 74; Wilson v. Loomis, 55 Ill. 352; Wortman v. Price, 47 Ill. 22.

Messrs. D. L. JONES and C. T. BACKUS, for appellee.

The rule is well established that if a married woman allows her husband to manage and sell her property as his own, a purchaser under him will be protected unless notified that the husband is acting as the agent of the wife. But as regards his creditors, we understand the rule to be that if the wife allows the husband to manage and control her property and use it as his own, such use and control being consistent with the common interests and the proper enjoyment of it by both, does not render such property liable to the debts of the husband. Dean v. Bailey, 50 Ill. 481; Primmer v. Clabaugh, 78 Ill. 94.

Where the labor of the wife is in any kind of business with

Rice v Sayles.

the husband's assent, in good faith, the wife may claim the profits and proceeds. Cunningham v. Hanney, 12 Ill. App. 437.

The law of 1861 entirely changed the law in regard to the property rights of the wife and placed her in the same position in that regard as if she were sole. Larison v. Larison, 9 Ill. App. 27.

Neither the husband nor his creditors have any claim upon money paid to the wife by persons boarding with them, since the Act of 1861, for their board, where it appears that she was the meritorious cause. Partridge v. Arnold, 73 Ill. 600; Stewart v. Potts, 9 Ill. App. 86.

BAKER, P. J. In September, 1885, Chauncey H. Rice, a Constable of Lake County, levied an execution issued by a Justice of the Peace on certain articles of household furniture as the property of Frank Sayles, defendant in the execution, said articles being found in and taken from the hotel at Fox Lake in which said Sayles and wife lived. The day succeeding that on which the levy was made, the wife, Jane Ann Sayles, replevied the property in a suit before a Justice, and such proceedings were afterward had in such suit as that upon a jury trial in the County Court, on appeal from the Justice, there was verdict and judgment for her, and thereupon this appeal was taken by the Constable.

More than eight years prior to the levy Frank Sayles and Jane Ann Sayles, who had then been married some four or five years, moved upon the hotel premises at Fox Lake, and from that time down to the date of the levy lived there and were engaged in the hotel and boarding house business. The place was paid for by persons in Chicago who took their pay out in board. A conveyance of the real estate was made to the husband when the enterprise was first started, and this conveyance was recorded. Almost all of the furniture of the hotel was paid for with the earnings of the business carried on there.

An addition to the building was constructed, and it was paid for with $1,600 that is admitted to have been the money of the husband. Both hotel and furniture were assessed for taxation, year after year, in the name of the husband, and both

were insured every year in his name. The business was conducted in his name, and he was publicly advertised as the proprietor. The hotel registers named him as proprietor and the letter heads and bill heads bore the same name. The board bills were receipted in his name as proprietor, and the receipts taken were in the same name. The husband attended to the office, sometimes with the assistance of a clerk, generally collected the board bills, and attended to many of the outside affairs connected with the business; and the wife usually hired the servants, sometimes attended to outside matters, and had the management of the servants and of the housework and culinary department.

On June 23, 1885, the husband made a deed of the hotel real estate to his wife. They both, on July 10, 1885, joined in a deed of said real estate to one Fred S. Erskine, and on the same day Erskine re-conveyed the same property to the wife. On the same 10th day of July, 1885, the husband and wife made a formal deed of conveyance to said Erskine of all the furniture, wares, billiard tables, pool tables, show cases, boats, horses, wagons, buggies, cows, family stores, wearing apparel, and all other property of every description on the hotel premises. And on the same day Erskine made a like deed for the same property, conveying it back to the wife.

These various conveyances were all acknowledged before D. M. Erskine, a notary public, and it is an admitted fact that no consideration whatever was paid for any of them.

To overcome the force of the facts above stated and of others we have not mentioned, appellee relies upon several circumstances. One of these is the claim that she had all along been the real owner of the hotel, and she bases this claim upon the ground that the arrangement with the Chicago parties by which one of them conveyed the land and others put in money for building purposes, with the understanding that the debts should be boarded out, was made with her.

This circumstance is of very little force in view of the fact the deed was forthwith made and made to her husband, and was recorded, and the title allowed to remain in that condition for over eight years. Other circumstances relied on are that when she married, some thirteen or fourteen years before the trial,

she had a few articles of furniture, bedding, etc., and that what remained of these went to help furnish the hotel; and that she also had, at her marriage, $300 in money, which was used for the same purpose; but she states in one portion of her testimony that she used this $300 when she first went to housekeeping, and in another place she says she used it four years ago.

The principal point relied upon is that Mr. Sayles is an inefficient and incapable business man, while Mrs. Sayles is an energetic woman and good manager, and managed and governed not only the servants and the internal affairs of the establishment, but also Mr. Sayles himself, and that therefore the property and business were hers.   It is admitted that the husband collected most of the board bills, but the answer made is that he handed the money over every night to his wife.   It is not denied that he largely conducted the outside affairs of the hotel, and most frequently made the purchases of furniture, supplies and other things for the house, but it is insisted that in so doing he was acting under directions from his wife, and that he usually went to her to get the money to make purchases.   Another point relied on is that Mrs. Sayles can not read and write, and therefore is not responsible for the advertisements, and the way in which receipts were given and taken, and board bills made out, and for what appeared upon the letter heads and hotel registers.

We think it plain that Erskine was used as a mere convenience for the purpose of transferring the title of the personal property from the husband to the wife; he paid nothing and got nothing; there was no delivery of the property to him, and the furniture and goods and chattels in the hotel remained there all the while, in the joint possession and control of husband and wife, without even an apparent change of custody

One can not do by indirection that which the law will not permit him to do directly.   The statute provides that where husband and wife are living together, no transfer or conveyance of goods and chattels between them should be valid as against the rights and interests of any third person, unless such transfer or conveyance is in writing and acknowledged

and recorded in the same manner as chattel mortgages are
required to be acknowledged and recorded in cases where the
possession of the property is to remain with the mortgagor.
The Mortgage Act requires chattel mortgages to be acknowl-
edged before a Justice of the Peace of the town or district
where the mortgagor resides. The two deeds to personal prop-
erty here in question were acknowledged before a notary public.

The attempted transfer was in conflict with the mandate of
the statute, and was a fraud in law, even if not a fraud in fact.

Mrs. Sayles took nothing by the deeds to the personalty.
The acceptance by her of the conveyance was, however, a
solemn acknowledgment of the title of her husband to the
property.

But, waiving this, and leaving the deeds out of considera-
tion, where husband and wife are living together as such, and
even if boarders were kept in the house, the presumption of
law, notwithstanding the Married Woman's Acts, is that the
goods, chattels and personal property in the house and in their
joint possession are the property of the husband. Reeves v.
Webster, 71 Ill. 307; Flynn v. Gardner, 3 Ill. App. 253.

The burden then, in this case, was upon the wife, not only
by reason of her being the plaintiff in the suit, but also on
account of the *status* of the property and business, to establish
the fact such business and goods and chattels were her own
separate property.

We do not regard that the circumstances that a husband is
inefficient as a business man, and the wife an energetic busi-
ness woman, and that she may have him under such subjection
and control that the funds arising from the business in which
they are both engaged are usually placed in her custody, and
that the purchases made for the house are usually at her dic-
tation and command, will necessarily, or even to any consider-
able extent, determine an issue in respect to the ownership of
the personal property in the house which they occupy together.
Such facts may be very pregnant to prove the ability of the
wife and the worthlessness of the husband as a good manager,
but they are not at all decisive on the question of the right
of property. Many an industrious and thrifty woman accu-
mulates property for a shiftless husband.

Rice v. Sayles.

The claim is made the wife could not read and write, and did not have notice that the business was being carried on in the name of the husband.   The hotel and business appeared to the world as the hotel and business of Frank Sayles, and it was openly and notoriously carried on as such.   The rule is that where one deals upon the faith of the manner in which a particular business is openly and notoriously conducted, the persons who really and in fact have an interest as partners, or otherwise, in such business, will be conclusively presumed to have such knowledge and notice of the way in which such business is so carried on and conducted, whether by partner or agent, as in the discharge of their plain duty they might and ought to have obtained.   It is also the rule, that where one of two innocent parties must suffer loss on account of the wrong-doing of another, the loss should fall on him or her whose agent occasioned the loss.

In our opinion, the verdict of the jury in this case was so against the law and the evidence that it should not be allowed to stand.   We can only account for the finding of the jury and the judgment of the trial court upon the supposition that they did not pay due heed to the suggestions made by the Supreme Court in Wilson v. Loomis, 55 Ill. 352, that while the statutes in relation to the separate property of married women should be construed liberally for the protection of the just rights of married women in the use and enjoyment of their separate estates and property, yet they must not be so construed as to permit unworthy men, under their cover, to perpetrate gross frauds on the rights of their creditors.

Many of the instructions given for appellee were inaccurate statements of the law in its application to the facts of this case, although as applied to other and different cases, some of them might have been well enough; as it was, they were calculated to and did mislead the jury.   Upon another trial the instructions can be made to conform to the views herein expressed.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*