### OF THE

# COURT OF APPEALS

### OF THE

## STATE OF COLORADO.

### SEPTEMBER TERM, 1895.

STRAMANN ET AL. v. SCHEEREN ET AL.

7  1
18 96

1. MARRIED WOMEN—POWER TO CONTRACT WITH HUSBAND.
A married woman has, under the statute, power to control and dispose of her individual property and to deal with her husband in all that pertains to it, as well as with others, as if she were *feme sole.*

2. SAME.
Transactions between husband and wife may be carefully scrutinized to see that they are not collusive and in fraud of the rights of others, but the same rules and legal principles that control in dealing with others must be applied to them.

3. SAME.
The husband owned city lots and the wife had money which she desired to invest. Under mutual agreement the lots were improved with her money. *Held,* that she had an equitable interest in the property which could be asserted against her husband.

4. SAME—PREFERENCE OF CREDITORS.
While a debtor retains control of his property he may prefer his creditor, although that creditor be his wife.

5. SAME.
The claims of wives against their husbands, when properly established, are allowed the same consideration as that of others.

*Appeal from the District Court of Arapahoe County.*

VOL. VII—1                                                    1

THIS was a suit in equity brought by appellees to cancel a deed of conveyance of certain property in the city of Denver, made by appellant, W. J. Stramann, to his wife, Elizabeth H. Stramann, the other appellant, on the 15th day of March, 1893.

It is alleged in the complaint that the plaintiffs recovered a judgment on the 2d day of August, 1893, against the defendant W. J. Stramann, for $833 and costs; that on August 3d an execution was issued, which was returned unsatisfied. That on the 15th day of March, 1893, *after the debt was contracted*, for which a judgment was obtained, W. J. Stramann was the owner of certain real estate (describing it) in the city of Denver, which he on that date conveyed by deed to his wife, Elizabeth H., for the expressed consideration of $7,500, but that no consideration in fact passed, and that at the time of making the deed Elizabeth was insolvent and without means to pay for the property. That W. J. Stramann made the conveyance *with intent* to delay, hinder and defraud his creditors, especially the plaintiffs, and has no other property. Prayer: That the deed be declared fraudulent and void, and the plaintiffs' judgment satisfied out of the property, and for an injunction restraining the lease or incumbering the property.

The answer, after general and special denials of each important allegation, alleges that defendants were married in April, 1887; that in November, 1887, the defendant W. J. Stramann purchased the land in controversy, and paid for the same, including taxes, the amount of $2,700; that the lots were unimproved; that previous to the marriage of defendants, Elizabeth H. had been a partner with her father in the grocery business in Cincinnati, from which she realized over $5,000; that her father died in 1885, from whose estate she had $1,200, that she also engaged in other business from which she realized $500, all of which sums, amounting to over $6,700, she had in money. In the year 1888 the husband and wife agreed to build houses upon the lots with the money of the wife; that the houses were built at the cost

of $6,600, with the money of the wife. The agreement also provided that the husband was to have one third of the income of the rents of the property and the wife two thirds. The agreement between the parties was verbal. The title stood in the name of W. J. Stramann until the conveyance to the wife in March, 1893. There was no promise on the part of the husband to repay the money or to convey the property or any interest in it to the wife. It is further alleged that, after the building of the houses, the wife received as her portion of the rents over $2,000 ; that on October 31, 1888, W. J. Stramann borrowed $1,000, which was secured by deed of trust upon the property ; that in December, 1891, Elizabeth H., at the request of her husband, paid the debt, and the property was released ; that in the year 1890, W. J. Stramann borrowed $2,500, which was secured by deed of trust on the property, which still remains unpaid ; that in February, 1891, W. J. Stramann leased a hotel from the plaintiffs ; that the wife objected to the leasing and moving into the hotel ; that an agreement was made between husband and wife that the wife was to superintend the hotel and the husband was to pay her for such service $25.00 per month ; that for the services so performed there was due and owing her from the husband $775 ; that the wife also delivered to her husband a piano worth $300, which he sold ; that the said several sums, $6,600, $1,000, $775 and $300, amounting to $8,675, were the separate property of the wife, and that no part of it had been paid except by the conveyance of the property ; that the value of the property conveyed does not exceed $9,000, and only $6,500 over the $2,500 incumbrance, and that the property was conveyed to the wife March 15, 1893, to secure her equitable interest in the same, and to pay and discharge, as far as it would, the various sums of money due the wife.

Plaintiffs in reply deny and traverse every important allegation of defendants' answer, particularly and specifically those wherein it was alleged that the wife had money to the amount of $5,000, or any other amount, as proceeds of

the partnership with the father, and that she received $1,200 from her father's estate; and allege that she had no money in her own right, and put none in the property in controversy; again allege the conveyance to the wife to have been made solely for the purpose of defrauding plaintiffs and preventing the collection of their demand; set up the contract and a copy of the lease of the hotel, only one clause of which, as follows, need be cited: " To pay the said party of the first part, as rent for the said demised premises, the sum of eleven thousand eight hundred and fifty (11,850) dollars, payable as follows : One hundred and seventy-five dollars at the ensealing and delivery of these presents, the receipt hereof being hereby confessed and acknowledged; one hundred and seventy-five dollars on each the first days February, 1891, March, 1891, April, 1891, May, 1891, June, 1891, and thereafter on the first day of each succeeding month and until the determination of this lease, the sum of two hundred (200) dollars, and all water license for the use of water by the said parties of the second part during their occupation of said premises."

The following facts were stipulated by the parties : " Lease set out in replication admitted to be correct; that the debt for which judgment in the county court was recovered was for an installment of rent under such lease accruing subsequent to the execution of the deed sought to be set aside; that the lease was made and entered into before the transfer of the property herein sought to be set aside."

After a lengthy and elaborate trial the court found the following facts from the evidence :

" 1. That the defendants intermarried in the month of April, 1887.

" 2. That the defendant, Elizabeth H. Stramann, at the time of the marriage was in possession in her own right, in money, of upward of $6,000.

" 3. That in 1888 the defendant W. J. Stramann was, and for some time prior thereto had been, the owner of lots 8, 9 and 10, block 5, in Hunt's addition to Denver, then unim-

proved, and his wife was still in possession of the said money and other moneys, altogether amounting to $6,000.

"4. That in the year 1888 the defendants agreed together that six houses should be built upon the said lots for the purpose of renting, and that the defendant Elizabeth H. Stramann's money should be used for that purpose, and that the rents should be divided between the defendants, two thirds to the wife and one third to the husband.

"5. That the houses were built, all the business relating thereto being transacted by the husband in his own name, and the wife turning over to him her money to the amount of $6,600 from time to time, and he expended it in the construction as it became necessary.

"6. In the construction of the houses, the husband made a deed of trust upon the property to secure the sum of $1,000 which he borrowed to put into the improvements, and the wife afterwards upon his request furnished him with the money with which to pay off this incumbrance; but no promise was exacted by the wife nor made by the husband that the money should be repaid to her.

"7. That subsequently to January 1, 1891, the defendant W. J. Stramann executed a trust deed upon the premises for the sum of $2,500 for money borrowed for his own individual use; this incumbrance has not been paid off, but still remains a charge upon the property.

"8. That on March 15, 1893, the husband conveyed the property to his wife to secure her for the $6,600, and also for the $1,000 additional which she furnished with which to pay off the $1,000 incumbrance, she paying no other consideration therefor.

"9. That the husband collected the rents, and as collected turned over to the wife two thirds thereof, retaining the remaining one third for himself.

"10. That the conveyance to the wife nor any conveyance or security upon the property was ever mentioned between the defendants until the latter days of December, 1892."

Then follows the finding of the court in regard to the

leasing and occupancy of the hotel, and copy of a portion of the lease above cited, all of which is unimportant in the decision of the case, as the facts were admitted, and no controversy nor evidence in regard to them. Then occurs the following findings of fact:

"13. The plaintiffs' judgment against W. J. Stramann was rendered on account of installments of rent, which by the terms of the lease became due after the conveyance of the lots to his wife.

"14. At the time the lease was made the plaintiffs knew that the title to the lots described in the complaint in W. J. Stramann, and that the business connected with the construction of houses had been transacted by him in his own name, and were ignorant of the agreement between the defendants in relation to the erection of the houses and that the rents were to be or were divided between them, and relied in part in making said lease upon the apparent financial ability of said W. J. Stramann.

"15. The defendant Elizabeth H. Stramann knew the lease was entered into by the husband, that he was negotiating therefor, and also knew of its making at the time it was made.

"16. At the time of the conveyance to the wife the total value of the property conveyed was $10,200; $3,600 of that sum being the value of the lots without improvements." Followed by quite a lengthy review of the common law and the statutes of this state as to the right of a wife, and concluding as follows: " The money which the defendant Elizabeth H. Stramann gave to her husband and by him was used in the construction of the houses was not only given to him without any promise from him to return it to her, but given to him for the purpose of being used in his own name, to build houses upon his land, which, when built, were incorporated with and became a part of his real estate. The promise to divide the rents with her was in no sense a promise to return the money which she gave him, neither was there anything in the transaction connected with the giving him

$1,000 to pay off the incumbrance upon the property which tends to constitute a promise by him to return the money.

" There was then no legal liability on his part to return her the money, nor was there any obligation upon which a court of equity could take hold so long as the defendants continued to live and cohabit together as husband and wife. It is doubtless true that these moneys would be considered by the court of equity in case of a divorce or a suit for separate maintenance by the wife in which the husband and wife alone would be interested in a division of the property accumulated through their joint contributions and efforts.

" The conveyance of March 15, 1893, ought not to be sustained to defeat the plaintiffs' recovery of this claim for the debt of W. J. Stramann, contracted upon the faith that he owned the property, and, upon the other hand, it ought not to be set aside as void so as to deprive the defendant Elizabeth H. Stramann of her claim upon the property created by the deed. It ought to be held good as a conveyance subject to the plaintiffs' claim on account of the obligations incurred by W. J. Stramann under the lease. Let a decree be prepared accordingly. * * * It appearing to the court that when the defendant William J. Stramann contracted the obligation upon which the judgment mentioned in the complaint was rendered, he held the title to and was the owner of the lands described in the complaint, and hereafter described, and that the plaintiffs at the time said Stramann contracted said obligation relied upon the financial ability of said Stramann resting in the ownership of said lands."

Then follows the decree subjecting the property in controversy to the payment of the plaintiffs' judgment, ordering the execution to be levied upon it and the property sold.

Messrs. RIDDELL, STARKWEATHER & DIXON, for appellants.

Mr. SAM. B. BERRY, for appellees.

REED, P. J., delivered the opinion of the court.

The suit was brought to cancel and set aside a deed of conveyance made by appellant W. J. Stramann to his wife, the other appellant, on March 15, 1893, alleging that no consideration passed from Elizabeth H., that she was insolvent and without means, and that the husband conveyed the property to the wife "*with intent to hinder, delay and defraud his creditors and especially the plaintiffs.*"

The pleadings of plaintiffs in alleging the supposed frauds were not only very broad, but detailed and specific. The issues were framed and the trial had upon the allegations of fraud.

There were no issues in regard to the respective equities of plaintiffs and defendant Elizabeth H. The judgment and decree legitimately should have been either sustaining the deed or declaring it void and fraudulent. The finding and decree are hard to be reconciled. After finding that there was no fraud, that the transactions between husband and wife were *bona fide* and legitimate and the deed valid, proceeds to adjudicate the priority of the respective claims, then concludes by setting the deed aside and subjecting the property to the payment of the debt of plaintiffs on account of defendant's priority or precedence, or on some undefined ground hard to comprehend and not embraced in the issues; the result being substantially the same as if the issues of fact had been found for the plaintiffs.

The findings of fact by the court numbered consecutively from 1 to 10 were all in favor of defendants and were fully warranted by the evidence. Plaintiffs signally failed to establish fraud or controvert or discredit the allegations of the answer or to throw any doubt over the regularity and integrity of the transactions between the husband and wife.

It is true that the allegations of the answer were supported mainly, if not wholly, by the testimony of the husband and wife. Transactions of this kind are so often undertaken to cover the property and defraud creditors, and the opportunities are so great, that where the validity of the transaction is only shown by the testimony of the husband and wife,

courts scan them very closely and regard them with great suspicion, and where the proof is conflicting and such as to cast doubt upon the honesty of the dealings, such doubts are usually resolved in favor of the creditor; in other words, clear and unequivocal proof of the alleged facts is required; but where, as in this case, there is no conflict of evidence nor proof of circumstances casting doubt upon it, a court is from necessity compelled to accept the transactions as honest and legitimate.

In this case the history and character of the wife as shown by the evidence was such as to support her contention. Her industry was such that she continued employed at whatever wages were obtainable, and was employed as clerk by her husband before their marriage, and insisted on receiving wages from him at $25.00 per month while engaged in his hotel after marriage. She is shown very prudent and economical and desirous of personal gain.

The facts having been established beyond dispute, the trouble in the findings and decree arises in the application of the law by the learned court, and the attempt to apply the common law to the facts. Any attempt to harmonize our statutes with the common law and apply both must result in confusion and error.

The effect and intention of our statute, as well as that of other states where the statutes are in the same line, is to abrogate and destroy the old principles of the common law, releasing the wife from the humiliating and servient position formerly occupied at common law in regard to her property, investing her with an individuality and personal identity, releasing her property from the control of the husband and allowing her to control, handle and dispose of her individual property and deal with her husband in all that pertains to it, as well as with others, as if she were *feme sole;* and this being so much in derogation of the common law, and at variance with it, any attempt to apply both must end in failure. Under our statutes, courts can only carefully scrutinize transactions between husband and wife, to see

that they are not collusive and in fraud of the rights of others, and then apply to them the same rules and legal principles that control in dealing with others. There is no other logical ground.

In dealings between husband and wife, as between others, particularly in equity, the *intention* of the parties, where the same can be reduced from the facts and circumstances of any particular case, must control in the construction of them, and the same inferences and implications arise.

A troublesome element in most cases in court where questions in regard to dealings between husband and wife are involved arises from the fact that so much proper, mutual confidence exists, that the dealings and transactions are not witnessed and conducted with the same formalities that characterize dealings with outsiders; hence too much is left to be implied and inferred from the existing facts, compelling courts to deduce the intention from the facts.

Before applying the law and decisions in regard to transactions between husband and wife under the modern statutes to the facts of the case, it may be well to dispose of, as preliminary, the construction of the contract of the lease of the hotel between the parties.

The court holds the property in controversy liable for the debt, finding: "That at the time the lease was made plaintiffs knew that the title to the property described in the complaint was in W. J. Stramann and that the business connected with the construction of the houses had been transacted by him in his own name and were ignorant of the agreement between the defendants, * * * *and relied in part in making said lease upon the apparent financial ability of W. J. Stramann.* * * * The conveyance of March 15, 1893, ought not to be sustained to defeat the plaintiffs' recovery of this claim for the debt of W. J. Stramann contracted upon the faith that he owned the property."

The learned judge evidently misconceived the contract of leasing. From the fact that it was stated that the gross or aggregate rent for the full term of five years was to be

$11,850, the court construed it as a debt contracted at the time of the execution of the lease, to be paid absolutely, contracted on the part of the plaintiffs with regard to the property owned by W. J. Stramann and his financial responsibility. There are several obvious reasons why this construction is erroneous.

*First:* There was no consideration for any debt. The future use of the leased property for the full term of five years was to be the consideration and the entire term would have to elapse without payment of rent before the aggregate debt would be created.

*Second:* The lease might have been terminated at any time by the destruction of the property. The lease provides that in case the building shall be destroyed by fire or become untenantable that the rents shall cease until rebuilt, but the rebuilding was to be at election of plaintiffs. Thus suspension of rent or an end of the lease is provided for.

*Third:* By the provisions of the lease immediately following the statement of the gross sum, the lessee was to pay each and every month rent in advance of occupancy, and upon failure to so pay there were stringent and elaborate provisions for terminating the lease, reëntry and eviction of the tenant without legal process. The money having to be paid in advance, and the only consideration of such payment being the right to the use of the property in the ensuing month, it is evident that there could be no debt except by default in the advance payment and the occupation of the premises after such default, and that the inception of any debt for rent could only be after the default occurred; then by the terms of the lease it was optional with the plaintiffs to either allow a debt to be contracted as of that date, or to reënter and terminate the tenancy. The judgment sought to be enforced in this suit was based upon these provisions of the lease, and this construction of the contract was for default in the payment of rents for a fraction over four months prior to August 2, 1893.

If the gross sum of $11,850 mentioned was a debt for which

W. J. Stramann became responsible at the time of executing the lease, the judgment should have been for the entire sum, less the payments made previous to the default.    Plaintiffs should not be allowed to proceed and obtain a judgment for rent under the covenants of the lease, then adopt a repugnant theory for the purpose of collecting it.

The court also found as a fact " that the defendant Elizabeth H. Stramann knew the lease was entered into by the husband, that he was negotiating therefor, and also knew of its making at the time it was made."    We were at a loss to understand the importance and pertinency of this finding or how it could in any way influence the judgment.    By reference to the brief and argument of counsel for appellees we find it seriously urged, and numerous authorities cited in support of the proposition, that the knowledge of the wife of the intention to lease a hotel, and the leasing of it by the husband without a declaration by her of her private affairs, and that she had an equitable interest in the property of the husband in no way involved in the contract of lease, created an *estoppel*, and that by reason of having kept silent in the matter in no way pertaining to her estate, she was legally liable for the debt of her husband subsequently contracted.    The contention may be dismissed by the remark that there is not an element of estoppel in it and no authority cited supports the proposition. No precedent can be found where a court has carried the law of estoppel to the length here contended for.

As to the intention of the husband and wife in regard to the use of the money of the wife, all the evidence is that of those two persons.    He owned the lots valued at $2,700.    She had her money idle; said she would like to *invest* it.    The husband suggested the improvement of his lots with her money, and that high rents could be obtained for the buildings.    She finally agreed to the proposition on the basis of two thirds of the rent to her and one third to the husband.    She formerly loaned another party $700, which had been paid in; had also from time to time loaned the husband temporarily a few hundred dollars, which he had returned.    The cost of the

buildings was $6,600, which she handed over to him in amounts needed as the buildings progressed, to be paid by the husband to the contractors. All the evidence negatives the intention of the wife to relinquish her control or deliver the money to the husband to be by him managed and controlled. The words *invest and investment* have a well defined legal definition. And. Law Dict.: "Invest. To place money so that it will yield a profit. * * * In common parlance, putting out money on interest, either by the way of loan, or by the purchase of income producing property." Cent. Dict.: "To employ for some profitable use; convert into some other form of wealth, usually of a more or less permanent nature, as in the purchase of property or shares or in loans secured by mortgage."

It will be seen that in all cases of investment, although the specific character of the property is changed, the title and control remains with the investor.

The evidence shows that both husband and wife regarded it as an investment, and that the wife had received over $2,000. Although no deed passed at the time, the right of the wife to her pro rata share of the improved property was an equitable title that could have been asserted against the husband. Not a case cited by the learned counsel for appellees goes to the extent claimed, or is parallel. In *Coon v. Rigden*, 4 Colo. 283, it was said: "Should the wife permit the husband to deal with and sell her separate property as his own, or obtain credit upon it as his own, undoubtedly this would be a fraud against which courts would extend their protection."

In *Mattingly v. Obley*, 1 Ill. App. 626, relied upon by counsel, the opening sentence shows its want of applicability. It is: "The transaction, if it disclose any interest on the part of the wife, shows nothing more than a loan of her money to the husband for the purpose of carrying on business." The same may be said of *Patten v. Gates*, 67 Ill. 164, and *Hocket v. Bailey*, 86 Ill. 74.

Counsel says: "I desire to especially call the attention of

the court to the case of *Beecher v. Wilson et al.*, 84 Va. 813; "
and proceeds to state: " Beecher was the owner of a farm in
Virginia valued at $6,870. · At that time he was largely in-
debted to Wilson et al. On said date he deeded to his son
O. Beecher, Jr., as trustee for the separate use of the wife, the
farm, and the court set aside the conveyance." Counsel does
not inform us whether the decision was at common law or
under statutes similar to ours, but this is unimportant, as
*he was largely indebted to the parties at the time of the convey-
ance*, while in this case there were no debts until nearly five
years after the investment and contract, and some months
after the execution of the deed.

The failure to require a deed from the husband is readily
explained by the confidence of the wife and the solvency of
the husband; but after a time the ill health of the husband
and the fear of his death, and that without a conveyance her
property would pass to his heirs, impressed her with the ne-
cessity of calling for a deed, which was subsequently made.

At the time of the conveyance it is not shown that he
owed any debts except the $2,500, secured by deed of trust
upon the property, and the conveyance to her subject to such
deed of trust could not operate as a fraud upon others.
Even at common law, had the conveyance of his remaining
equity in the property been made to the wife without other
consideration than " love and affection, " it would have been
sustained on the findings of facts by the court.

It is unimportant whether the interest of the wife was an
equitable interest in the realty or a debt recognized by the
husband. Regarding it as the latter, and even admitting the
insolvency of the husband at the time of the conveyance,
which is not shown, the debt being established as *bona fide*,
as found by the court, both the supreme and this court have
decided in numerous cases that the debtor, while he remained
in the control of his property, could, by deed or assignment,
prefer one creditor, to the injury or exclusion of others, for
a *bona fide* debt. The debt being established beyond contro-
versy, the wife must stand the same as any other creditor.

The transaction between Stramann and wife could not be regarded as creating a personal debt by Stramann, as there was no promise to repay nor expectation of repayment. It was to be expended upon the property,—an investment. It increased the value of the real estate from $2,700 to $10,000. *Smith v. Smith,* 4 N. Y. Supp. 669, was a case almost identical in its facts, only that the parties were reversed. The wife had the title to the lots. The husband had money in the bank at low interest, and proposed to use the money to construct buildings on her lots. He built the block at an expense of $4,500. Afterwards the husband requested her to convey the property to him. She declined. The husband brought suit to compel a conveyance or to obtain an equitable lien for the money expended in building. The lien was decreed. The wife appealed to the general term, where the decree was affirmed. She then appealed to the court of appeals, where the decree was again affirmed. (125 N. Y. 224.) The court said: " We think the judgment is correct. It would be contrary to equity to permit the defendant, under the circumstances, without subjecting the property as security in some form to the expenditures made upon it with her knowledge and consent. She was informed by her husband that he had money invested at low interest which could be used in improving the property in such way as to yield a much larger income to him. From what was said she is chargeable with knowledge of his intention to expend the money only for the purpose of making a more profitable investment, and with this knowledge on her part she permitted him to erect the building. *Unless the transaction gave him some claim or lien upon the property, he had, of course, no investment at all after he drew the money from the bank, and used it in the construction of the block.*" See, also, *King's Heirs v. Thompson,* 9 Pet. (U. S.) 204 ; *Perry v. Board,* 102 N. Y. 99 ; *Finlayson v. Finlayson,* 17 Ore. 347 ; *Garner v. Second Nat'l Bank,* 14 U. S. S. C. Supp. 390.

" The courts allow the claims of wives against their husbands, when properly established, just the same consideration,

force and integrity as that of strangers." *Riley v. Vaughn,*
116 Mo. 169. And see *Cole v. Lee,* 45 N. J. Eq. 779; *Iowa
City Bank v. Weber,* 72 Iowa, 137; *Jones v. Davenport,* 44 N. J.
Eq. 33; *Denny v. Denny,* 123 Ind. 240; *Schaer's Appeal,* 140
Pa. St. 420; *Chadbourne v. Williams,* 45 Minn. 294; *Leath-
white v. Bennett,* 11 Atl. Rep. 29 (N. J. Eq. Court), and au-
thorities in foot note. Although the conveyance by Stramann
to his wife was of the entire property, it was subject to the
mortgage of $2,500 put upon it by Stramann, and as shown
by the evidence was not equal in value to the amount the
wife had invested. Consequently no property of the husband
was conveyed to the wife.

The court erred in its application of the law to the facts
found. The decree must be reversed and the cause remanded
with instructions to enter a decree dismissing the suit.

                                                    *Reversed.*