[No. 1673.]

CAMPBELL ET AL. v. FILLMORE.

1. HUSBAND AND WIFE—SALE OF WIFE'S PROPERTY—ESTOPPEL.
A wife bought a team of horses and wagon and paid for them out of her own money. She permitted her husband to use them. The husband, with the wife's consent, traded one of the horses twice and the wagon once, at two of which trades the wife was present and herself paid the boot; at the other, she had seen the horse and authorized her husband to make the trade. The property was assessed for taxes in her name, and the team was spoken of amongst the neighbors as hers. The husband sold the team and wagon, collected the purchase money and absconded. The purchasers had no knowledge of the wife's ownership, and the husband represented to them that he was the owner. *Held* that the facts did not establish a holding out of the husband as the owner of the property so as to estop the wife from denying his authority to sell. And, in an action against the purchasers, she was entitled to recover the property, or its value.

2. SAME.
In an action by a wife against the purchasers of her property from her

husband, the utterances of the husband, whereby he claimed to be the owner, cannot be used to impeach the wife's title, unless she had knowledge of such utterances.

3. SAME.

The fact that a husband has charge and control of his wife's property raises no presumption of his ownership, nor that he has authority to sell it.

*Appeal from the County Court of El Paso County.*

Mr. GEORGE C. BERLIN and Mr. H. G. LAING, for appellants.

Messrs. KERR & HANNA, for appellee.

WILSON, J.

This action was instituted by plaintiff Fillmore to recover the value of a pair of horses, wagon and set of harness, of which she claimed to be the owner, and which she alleged the defendants had wrongfully taken and converted to their use. The defendants claimed title by virtue of purchase from Charles Fillmore, the husband of plaintiff. The ownership of the property by plaintiff was practically undisputed by the evidence, but it is urged on behalf of defendants that she knowingly and without dissent permitted her husband to use, manage and deal with the property in such a manner as to reasonably warrant the presumption that he was her agent, authorized to sell and dispose of the property, and that she by such conduct is estopped from denying such agency and authority to sell. The well established rule of estoppel in such cases is cited by counsel for defendants. It is :

" In accordance with this case it is now a well established principle that where the true owner of property holds out another, or allows another to appear as the owner of, or as having full power of disposition over the property, the same being in the latter's actual possession, and innocent third parties are thus led into dealing with such apparent owner, they will be protected ; or where others are innocently induced to

acquire rights in derogation of the secret or undisclosed claims of those who cause such action, the rights so acquired are secure, whether contested at law or in equity.   Such rights do not depend upon the actual title, right or authority of the party with whom they have directly dealt, but are derived from an act of the real owner which precludes him from disputing against them the existence of the title or right or power which he caused or allowed to appear to be vested in the party making the sale." Bigelow on Estoppel (4th ed.), p. 547.   This rule is undoubtedly the law, but its application must depend wholly upon the facts of the case in which it may be invoked.   In the case at bar the facts are such that, in our opinion, the rule does not apply.   It is not shown that Mrs. Fillmore ever held out her husband as the owner of the property, or in any manner permitted, or ever had any knowledge, that he at any time claimed to be the owner of the property, or to be invested with any authority to dispose of it in any manner whatever.   Before marriage, Mrs. Fillmore was the owner of a house and lot, her home.   Fillmore was without any means, and was unable to contribute anything towards the support of the family except by manual labor.   After marriage, therefore, in order to enable Fillmore to do something for the support of the family, Mrs. Fillmore by means of a mortgage upon her home secured a small sum of money with which she purchased the team in question.   All of the cash payments were made by her in person.   There were also a few deferred payments of small amounts.   These were likewise paid by her in person, except possibly one sum of $10.00, which she gave to Fillmore to deliver to the seller of the horses. After securing the team, it was used by Fillmore wherever he could secure a job, but with the express understanding with Mrs. Fillmore that what was earned by the team itself should be paid to her.   During her ownership of the team, one horse was traded twice, and the wagon once.   She was present at each of these trades save one, and whenever "boot" money was to be paid she paid it.   At one trade of the horse no boot money was paid, and she was not present at its con-

summation, but she swears that she had seen the horse before, and authorized Fillmore to make the trade. A number of her nearest neighbors testified that she at various times told them that the team was hers, and had been bought with her money. The property was also listed for taxation in her name with the county assessor, and no property was listed in the name of her husband. After the property had been used in this manner for something over a year, Fillmore sold the outfit to the defendants, received the purchase price and left the country, deserting his family. Within a few days thereafter, Mrs. Fillmore learned that the property was in the possession of the defendants, whereupon she went to them and demanded its delivery to her, which was refused. It is also undisputed that at the time of Fillmore's sale to the defendants, he stated that he was the owner of the property. It also appears in evidence that he made similar statements to the blacksmith who sometimes shod the horses.

This is a brief summary of the evidence as disclosed by the bill of exceptions, and it is in our opinion wholly insufficient to estop plaintiff from asserting her ownership. It is urgently insisted by defendants that the rule of estoppel should apply, because the plaintiff permitted Fillmore to use and manage the property in the manner in which he did. It will be seen that there is no evidence whatever to the effect that Mrs. Fillmore ever knew that her husband claimed to be the owner of the property, or that he had authority to use it or dispose of it in any manner except under her special sanction and direction. She cannot be held responsible therefore for the utterances of her husband which were never brought to her knowledge, and they cannot be used to impeach her title. *Vote v. Karrick, ante,* p. 388. The fact that he had charge of the property and used it and controlled it, did not of itself raise the presumption that he was the owner of it, or that he had any authority to sell and dispose of it. *Coon et al. v. Rigden,* 4 Colo. 283. It was there held that the laws of this state contemplate and provide for the independent acquisition and enjoyment of a separate estate by

the wife, and to say that being the *bona fide* owner of personal property, she must not allow her husband to have the general care of it, that he must avoid any contact with or custody of it on peril of subjecting it to his debts, would be practically to annul the statute, or attempt a separation of interest incompatible with the marriage relation.   With reference to the husband's control and management, the court said : " The husband is the customary guardian of his. wife's property where it does not pertain to the household.   Had the law in terms forbidden his care and custody, its provisions in the wife's favor would have been practically useless.   She could not have availed herself of them, except by living separate and apart from her husband."   The doctrine there announced is supported by a number of decisions in Illinois, from the statutes of which state our statute with reference to the property rights of married women was largely taken.   *Fawcett et al. v. Osborn et al.*, 32 Ill. 411 ; *Dean v. Bailey*, 50 Ill. 482; *Primmer v. Clabaugh*, 78 Ill. 94; *Blood v. Barnes*, 79 Ill. 438 ; *Klein v. Seibold*, 89 Ill. 541.

In *Dean v. Bailey, supra,* the court in speaking of the management and control by the husband of the wife's property, said : " Living under the same roof with his wife, the head of the family, and as solicitous for the material prosperity of his wife as for his own, it would be unavoidable that he should exercise the same care and control over her property as he would over his own, and in the eyes of the public, have the same freedom in its use.   We must construe this statute for the protection of married women in accordance with the intent of its framers, and accept all its innovations, and when the legislature has said that a married woman may own a horse in her own right, it is impossible for us to say that if she allows her husband to ride or drive that horse as he would one of his own, she thereby forfeits her title to his creditors.   As we have already remarked, such use must necessarily follow from the relation of husband and wife, if such trust and confidence exist between the parties as should exist, and as the law supposes to be implied in that relation."

We see no difference in principle where the assailant of the wife's title is a creditor of the husband, or a purchaser from him.

*Klein v. Seibold, supra,* was a case wherein the claimant was a purchaser from the husband, and the facts presented a much stronger case than the one at bar in favor of the purchasing defendant. The court held, however, that the wife was not estopped from asserting her title. We see no error in the findings of the court, nor in its application of the law to the facts proven, and the judgment will be affirmed.

*Affirmed.*